GEORGE F. BLACKWELL v. THE CITY OF GASTONIA.

(Filed 11 May, 1921.)

**1. Taxation—Licenses—Automobiles—Cities and Towns—Municipal Cor-porations—Action to Recover—Statutes.**

To recover of a municipality the amount collected in excess of that allowed by law for an automobile tax, it is necessary to comply with an existing statute requiring that demand for a return thereof should have been made within a period therein prescribed.

**2. Same—Protest—Common Law.**

In order to recover money paid a municipality as a license tax in excess of the amount the town was lawfully authorized to collect, and in the absence of statutory regulations, or under the common law, it is necessary that the one so paying should have done so under protest at the time or under circumstances of duress or such as would endanger his person or property; and where the payment has been voluntarily made, the action may not be successfully maintained.

APPEAL by plaintiff from *Bryson, J.,* at the December Term, 1920, of GASTON.

This is an action instituted in the justice's court on 16 August, 1920, to recover the sum of $24 paid by him to the city of Gastonia as a license tax imposed by said city for the business of operating one automobile for hire in said city, for the fiscal year beginning 1 June, 1919, to 1 June, 1920.

The amount of tax collected was $25, of which the plaintiff now seeks to recover $24, claiming that said city had no authority to impose a tax of more than $1.

It is admitted that the city of Gastonia is a municipal corporation, the same being chartered under chapter 199, Private Laws 1913, sec. 22 of which provides as follows: "The board of aldermen of the city of Gastonia, in addition to the powers of taxation heretofore granted, shall be and they are hereby empowered to levy and collect an annual privilege or license tax on all trades, professions, agencies, business operations, exhibitions, and manufactories in the said city," etc.

Also Public Laws 1917, ch. 136, subch. V and sec. 1, subsec. (j) provides that all cities and towns are authorized "To license and regulate all vehicles operated for hire in the city." In pursuance of this authority the said city of Gastonia passed and adopted the revenue ordinance, and collected the said tax of $25 from the plaintiff Blackwell on 10 June, 1919, and issued to him the license which is set forth in full in the record, and dated 10 June, 1919.

Blackwell applied for said license and made no protest, and no threats were made to force him to pay the same. The plaintiff Blackwell made

no demand upon the defendant for the return of said tax until 1 June, 1920, almost a year after payment of the same.

His Honor held the plaintiff was not entitled to recover, and entered judgment of nonsuit, and plaintiff excepted and appealed.

*George W. Wilson for plaintiff.*
*P. W. Garland for defendant.*

ALLEN, J. This action had been brought because of the decision in *S. v. Fink,* 179 N. C., 712, in which it was held that municipal corporations did not have authority, under the statute then in force, to charge a license tax on motor vehicles greater than $1, and under that decision the tax of $25 paid by the plaintiff was illegal, but it does not follow necessarily that the plaintiff can maintain this action to recover the tax so paid. Taxation being essential to the maintenance and administration of government, the courts are slow to admit claims which hinder the collection of taxes or deprive the government of the benefit of them, and usually the legislative branch regulates when and how actions may be brought relating to controversies in regard to taxes.

Pursuant to this policy the General Assembly, as far back as 1887, enacted that demand for the return of taxes must be made within thirty days after payment, and it was held in *R. R. v. Reidsville,* 109 N. C., 497, and *Wallace v. Teeter,* 138 N. C., 264, that the statute applied to all taxes, that the remedy provided was exclusive, and that a failure to make demand within the time prescribed was fatal to the right to maintain an action to recover the tax.

The present statute is not in the same language used in 1887, but the same purpose prevails, the same relief is afforded the taxpayers, and it would seem to be broad and comprehensive enough to cover all taxes, and if so the plaintiff cannot recover because he did not demand the return of the tax within thirty days after payment.

But if the tax which the plaintiff paid is not within the statute, he is in no better condition, because he did not pay under protest, and independent of statute, as said in *Teeter v. Wallace, supra,* "the remedy at common law was to pay under protest and recover back the money so paid in an action for money had and received," and this seems to be the rule which generally prevails.

The author says in 26 R. C. L., 455: "A person who voluntarily pays an illegal tax, even though he pays it under considerable actual pressure, cannot maintain an action to recover it back. . . . But the person assessed is not required to wait until his property is seized and sold, but whenever a party not liable to taxation is called upon peremptorily to pay upon a warrant under which the collector may

without any judicial proceeding arrest his person or seize his property and he can save himself and his property in no other way than by paying the illegal demand, he may give notice that he so pays it by duress and not voluntarily, and, by showing that he is not liable, recover it back as money had and received." And in 37 Cyc., 1178: "Whatever may be the ground upon which objection to a tax or to the assessment of it may be made, it is a well settled general rule that if the tax is paid by the person assessed voluntarily and without compulsion it cannot be recovered back in an action at law. . . . A payment is voluntary, in the sense that no action lies to recover back the amount, not only where it is made willingly and without objection, but in all cases where there is no compulsion or duress nor any necessity of making the payment as a means of freeing the person or property from legal restraint or the grasp of legal process."

Many authorities go further than this and hold that in the absence of a seizure of the person or property or a threat to do so, taxes paid cannot be recovered although there is a formal protest.

In *Managhan v. Lewis,* 10 Anno. Cases, 1050 (Del.), the Court denied a recovery, and said: "It appears from the case stated that the plaintiff, at the time of his payment of said taxes, made verbal objections to the payment of the same, and that the defendant, at that time, indorsed on the bill for said taxes and signed the following memorandum:

" 'The amount paid in settlement of this bill of taxes was paid to me by said taxable under protest as being illegally exacted and with the avowed intention of suing for its recovery.'

"It does not, however, appear that the plaintiff was sued, or that his property was distrained for said taxes, or that such suit or distraint was threatened, or that compulsion of any kind was used or threatened to enforce such payment.

" 'The coercion or duress which will render a payment of taxes involuntary must, in general, consist of some actual or threatened exercise of power possessed, or believed to be possessed, by the party exacting or receiving the payment, over the person or property of another, from which the latter has no other means, or reasonable means, of immediate relief except by making payment.' 2 Dillon Munic. Corp., par. 943.

" 'The payment by the plaintiff must have been made upon compulsion, as for example, to prevent the immediate seizure of his goods, or the arrest of the person, and not voluntarily. Unless these conditions concur, paying under protest will not, without statutory aid, give a right of recovery.' 2 Dillon Munic. Corp., par. 940.

"In *Wilmington v. Wicks,* 2 Marv. (Del.), 297; 43 Atl. Rep., 173, it was held that money paid under protest for a city license under an ordinance subsequently declared invalid was a voluntary payment, and could not be recovered back."

It appears from the note to the last case, and one to *Phoebus v. Manhattan Social Club,* 8 Anno. Cases, 667, that twenty-two states follow this doctrine.

The judgment must therefore be

Affirmed.