J. A. BOLICH, JR., AND WIFE, ROSALIE F. BOLICH, v. PRUDENTIAL INSURANCE COMPANY OF AMERICA, WACHOVIA BANK AND TRUST COMPANY, TRUSTEE, AND MRS. NONA S. HANES.

(Filed 28 February, 1934.)

**1. Trial D a—Where a party is entitled to affirmative relief on the pleadings adverse parties may not take voluntary nonsuit.**

In an action by a mortgagor to prevent foreclosure and to obtain judgment on a contract of a third person to pay principal and interest on the debt satisfactorily to the mortgagee, the allegations and evidence of such third person that the alleged contract was obtained by fraud and misrepresentations entitles her to the affirmative relief of having the contract canceled upon a favorable verdict of the jury, and the mortgagor and mortgagee may not take a voluntary nonsuit against her, the contract entailing liability on her part in the event of deficiency after foreclosure.

**2. Pleadings A f—**

The prayer for relief does not determine the scope of a party's right to relief, the scope of the relief being determined by the allegations in the pleadings.

**3. Cancellation and Rescission of Instruments B d—**

In an action to set aside an instrument for fraud plaintiff must show by the greater weight of the evidence affirmative facts entitling him to the relief.

**4. Same—Evidence of fraud in procurement of contract held sufficient to be submitted to jury.**

Evidence that plaintiff was a close business associate of defendant's husband, that defendant's husband became seriously ill and in a greatly weakened condition, that defendant herself prior to the execution of the contract had been ill, and that she was extremely worried over her husband's illness, and that while defendant's husband was in such weakened condition and while plaintiff was attending to business for him, plaintiff got him to sign a contract obligating himself on a large part of plaintiff's indebtedness, and that defendant signed the contract under direction of her husband because of his precarious health, and that the consideration for the contract was worthless, *is held* competent and sufficient to be submitted to the jury on defendant's cross-action to have the contract canceled for fraud.

**5. Cancellation and Rescission of Instruments A b—Whether misrepresentations were of fact or merely promissory representations held for jury.**

Representations by the owner of property that it was leased under long term leases and that the income therefrom was more than sufficient to pay taxes and interest on the debt, and that the value of the property for lease purposes was greatly increasing *is held* to amount to more than mere promissory representations under the facts and circumstances of this case, and raised a question for the jury as to whether they were intended and received as statements of material fact, and testimony of an auditor as to the actual income from the property was competent.

**6. Same—**

In an action to cancel an instrument for fraud the usual elements of fraud must be established.

**7. Fraud A a—Elements of fraud.**

The essential elements of fraud are a misrepresentation or concealment, intent to deceive or negligence in uttering falsehoods with intent to influence the action of others, actual deception, and reliance upon the misrepresentations by the complaining party.

**8. Cancellation and Rescission of Instruments B c—**

A party seeking cancellation of an instrument for fraud must act within a reasonable time after the discovery of the fraud or after it should have been discovered by due diligence, and must seek to rescind the whole transaction, and must not have ratified the transaction by any voluntary act in recognition of its validity.

APPEAL by defendant, Nona S. Hanes, from *Sink, J.,* at 13 March Term, 1933, of FORSYTH. Reversed.

This action was originally for injunctive relief. The plaintiffs on 11 March, 1930, made and executed a note to the defendant, Prudential Life Insurance Company, in the sum of $160,000 and secured same by a deed of trust to the defendant, Wachovia Bank and Trust Company, trustee, on certain lands on West Fourth Street, in the city of Winston-Salem, N. C. The deed of trust is recorded in the register of deeds office in Forsyth County, North Carolina, in Book 270, at page 301. $8,000 of the principal together with $4,800 was due and payable, which under the terms of the deed of trust rendered the entire sum due and gave power of sale. Pursuant to the provisions of the deed of trust, the land was advertised for sale on 20 November, 1931. The plaintiffs further alleged: "That this mortgage will not be foreclosed if the defendant, Nona S. Hanes, will pay or otherwise arrange interest and taxes amounting to around $7,000, and that the plaintiffs are unable to raise said sum. That on 20 November, 1930, the plaintiffs entered into a contract with the defendant, Nona S. Hanes, and her husband, W. M. Hanes, a copy of which is attached hereto, marked Exhibit A, and asked to be made a part of this complaint. That Nona S. Hanes is solvent in an amount in excess of the mortgage indebtedness," *et cetera.*

The contract of 20 November, 1930, provides among other things, that W. M. Hanes and Nona S. Hanes "contracts, covenants and agrees to pay, renew or handle in a manner satisfactory to both parties, each and every encumbrance against said properties as the same become due," *et cetera.*

"That Nona S. Hanes in consideration of the conveyance by the plaintiffs for her benefit has become primarily liable for the pay-

ment of the debt of the defendant, Prudential Insurance Company of America." The depression is set forth and a lengthy complaint unnecessary to detail.

The prayer of plaintiffs: "Wherefore, the plaintiffs pray that the defendants Prudential Insurance Company of America and the Wachovia Bank and Trust Company, as trustee, be restrained from foreclosing the deed of trust heretofore mentioned; that a mandatory injunction issue against the defendant, Nona S. Hanes, commanding and directing her to pay the encumbrances which she agreed to pay under the contract hereto attached, or submit to judgment in the sum of said indebtedness; and for such other and further relief as the court may deem just and proper."

The defendants, Prudential Insurance Company of America and Wachovia Bank and Trust Company, trustee, answer and admit certain facts and deny others and the prayer is as follows: "Wherefore, the defendants pray that the action be dismissed, that they go without day and recover their costs in this behalf expended, and, should the court continue the restraining order to the hearing, they pray that a receiver of the premises be appointed whose duty it shall be, among other things, to collect the rents thereof and apply the same towards the discharge of the obligations secured by the mortgage referred to in the complaint; and in the alternative that the court decree forthwith foreclosure of the deed of trust by a commissioner appointed by it."

Later they amended their answer to read as follows: "By leave of the court, the defendants, the Prudential Insurance Company of America and Wachovia Bank and Trust Company, trustee, amend the answer heretofore filed by adding to the prayer thereof that they have and recover judgment against J. A. Bolich, Jr., Rosalie F. Bolich, and Nona S. Hanes in the sum of $160,000 with interest on $160,000 from 11 March, 1931; upon $1,249.50 from 10 November, 1931; upon $2,731.25 from 30 November, 1931; and upon $870.00 from 11 November, 1931; and that said sums be declared to be a lien upon the property described in the mortgage or deed of trust referred to in second paragraph of the complaint, as of and from 11 March, 1930."

The defendant, Nona S. Hanes, set up a lengthy answer contending that the contract relied on by plaintiffs dated 20 November, 1930, entered into by and between the plaintiffs and herself and husband, W. M. Hanes, was induced by fraud on the part of plaintiffs. Among other allegations were that during the period of negotiations her husband was suffering from pulmonary tuberculosis and that during his illness he was "in almost constant communication with the said J. A. Bolich, Jr., who was handling numerous business transactions for him

and on whom he had come to rely; that their relationship was particularly close and friendly and he was constantly advised on business matters by the said J. A. Bolich, Jr., and on account of this relationship between them it was comparatively easy for the said J. A. Bolich, Jr., to influence the said W. M. Hanes, on whom he had so intimately relied."

The said Nona S. Hanes, further alleged in substance, certain material representations as to the rental value of the properties were made to induce the signing of the contract which were fraudulently made and relied on and calculated to deceive. Other allegations of fraud were alleged.

"That said J. A. Bolich, Jr., had been an officer of the Bolich Holding Corporation since its organization and knew the condition of its finances and the value of the properties, that the plaintiffs knew that the rents from said property were not and would not be sufficient to pay taxes and other charges hereinbefore set out, and that unless outside financial assistance were given that said properties would be lost by foreclosure sales held under mortgages or deeds of trust on said properties; that the said J. A. Bolich, Jr., advised the said W. M. Hanes and this defendant to sign said paper-writings aforesaid knowing that the said Hanes and this defendant relied on his advice and that this defendant would not refuse to sign said instruments if her husband so desired, on account of the condition of his health, that said advice was not given in good faith and constituted a fraud upon this defendant and the said W. M. Hanes; that all of said transactions were induced by the conspiracy and fraud of the plaintiffs for the purpose of taking advantage of the concentration of title of certain properties of the said Hanes in himself and this defendant free from the claims of his creditors other than joint creditors and passing to this defendant at his death so that said property would stand as additional security for the protection of the endangered properties of the Bolich Holding Corporation, and that by means thereof the said Bolich might be relieved of all risk of loss by reason of said transactions.

That no consideration or property right or anything of value whatsoever passed to the said W. M. Hanes and or this defendant, Nona S. Hanes, by reason of any or all of the transactions heretofore referred to, and the paper-writings setting forth the terms thereof; and that this fact was known to the plaintiffs; that they falsely and fraudulently represented that there was consideration and caused to be prepared for the signature of the said W. M. Hanes and this defendant, and obtained their signatures on the instruments heretofore referred to, which said instruments falsely purported to set forth consideration which was worthless and illegal and was known by the plaintiffs to be totally worthless and illegal; that said instruments and their recital of the purported

but worthless consideration set forth therein were fraudulent and con-
stituted a part of the conspiracy and fraud by which the plaintiffs
contrived to get indemnity from the said W. M. Hanes and this de-
fendant.

That during all of the said transactions, the said J. A. Bolich, Jr.,
acted as the agent of Rosalie F. Bolich, and as such agent had full
knowledge of all of the transactions and facts alleged in this answer;
that all of the representations and acts done by him as alleged in this
answer were done by him both in his own behalf and as agent of the
said Rosalie F. Bolich, and she is bound thereby.

That the stock certificates for the common stock of the Bolich Holding
Corporation are now in the possession of the receiver of the Bolich
Holding Corporation heretofore appointed in a civil action in the Su-
perior Court of Forsyth County entitled 'J. A. Bolich, Jr., et al. v.
Prudential Insurance Company of America et al.'; that this defendant
has repudiated all of said transactions and surrendered any and all right
and claim to said stock by virtue of the instruments heretofore re-
ferred to.

Wherefore, the defendant, Nona S. Hanes, prays judgment that these
plaintiffs take nothing by their action against her; that their action be
dismissed; that she go without day; and that the costs of this action
be taxed against the plaintiffs."

The plaintiffs in a lengthy reply set forth certain facts and denied
the allegations of fraud, et cetera. On 28 December, 1931, Judge
Clement appointed a receiver for the property of the Bolich Holding
Corporation which had been made a party and continued the case for
hearing to the next regular term of the Superior Court of Forsyth
County. At the regular term, Judge Harding on 14 January, 1932,
made an order in part: "That the court forthwith enter a decree of
foreclosure and appoint a commissioner to advertise and conduct a sale
of the premises described in the pleadings and in said deed of trust, the
court is of the opinion that the parties opposed to said motion and sale
have not alleged any equity or reason why said motion should not be
allowed, and said motion is, therefore, allowed, and W. F. Shaffner,
Esq., is hereby appointed commissioner by this court to sell the lands
described in the pleadings herein and in said deed of trust. . . . Re-
ceiver, is ordered and directed to pay to the Prudential Insurance Com-
pany of America, or its nominee, the net amount of rents then in his
hands derived from the mortgaged premises to be applied in accordance
with the terms and provisions of said deed of trust." An appeal was
taken to the Supreme Court of North Carolina. See *Bolich v. Ins. Co.,*
202 N. C., 789, when the judgment was affirmed.

BOLICH *v.* INSURANCE COMPANY.

The judgment at March Term, 1933, in part: "This cause coming on to be heard, and being heard, before his Honor, H. Hoyle Sink, judge presiding, and a jury, at the 13th March Term, 1933, of the Superior Court of Forsyth County, when upon the calling of the said action, J. A. Bolich, Jr., and wife, Rosalie F. Bolich, took a voluntary nonsuit on the cause of action alleged by them against Nona S. Hanes, and the Prudential Insurance Company of America took a voluntary nonsuit on its cause of action alleged against the said Nona S. Hanes, whereupon the case proceeded to trial upon the cross-action of Nona S. Hanes and the amended reply of the plaintiffs, which was adopted by the Prudential Insurance Company of America; and, at the conclusion of the evidence of the defendant, Nona S. Hanes, upon motion of counsel for the plaintiffs and the Prudential Insurance Company of America for judgment as of nonsuit, the court being of the opinion that the said motion should be allowed; it is therefore, ordered, adjudged and decreed that the motion for nonsuit by the plaintiffs and the defendant, Prudential Insurance Company of America, be allowed, and the action by the defendant, Nona S. Hanes, against J. A. Bolich, Jr., and wife, Rosalie F. Bolich and the Prudential Insurance Company of America be, and the same is hereby dismissed," *et cetera.*

An order was made by Judge Sink confirming the sale of the property in controversy, by the commissioner, W. F. Shaffner. Under the foreclosure proceeding, the property brought about $40,000 less than the debt secured by deed of trust. "The plaintiffs, J. A. Bolich, Jr., and Rosalie F. Bolich, made a motion to be permitted to take a voluntary nonsuit in their cause of action alleged against Nona S. Hanes. Motion allowed."

"The defendant, Prudential Insurance Company of America, made a motion to be permitted to take a voluntary nonsuit upon its cause of action alleged against Nona S. Hanes. Motion allowed. The defendant, Nona S. Hanes, excepted."

"The court then permitted the case to go to trial upon the further defense in the answer of the defendant, Nona S. Hanes and the replies of the other defendants."

"At the close of the evidence of Nona S. Hanes, the plaintiffs, J. A. Bolich, Jr., and wife, Rosalie F. Bolich, and the defendant, Prudential Insurance Company of America, moved for judgment as of nonsuit. Motion allowed. To the allowance of the motion for nonsuit the defendant, Nona S. Hanes, excepted and gave notice of appeal to the Supreme Court of North Carolina."

The defendant, Nona S. Hanes, made numerous exceptions and assignments of error. The material ones and necessary facts will be set forth in the opinion.

*Fred S. Hutchins and Ratcliff, Hudson & Ferrell for defendant, Nona S. Hanes.*

*Elledge & Wells and Parrish & Deal for plaintiffs.*

*Manly, Hendren & Womble for the Prudential Insurance Company of America and Wachovia Bank and Trust Company, trustee.*

CLARKSON, J. In the decision of this controversy, it must be borne in mind that we do not pass on the truthfulness of the facts alleged by Nona S. Hanes, we merely pass on the sufficiency of the evidence viewed in the light most favorable to her to be submitted to the jury, it is for them to ultimately pass on the facts. The first question involved on this appeal is whether the court below erred in permitting the plaintiffs and the defendants, Prudential Insurance Company and the Wachovia Bank and Trust Company, trustee, to submit to voluntary nonsuits when defendant, Nona S. Hanes, set up as a defense, an affirmative plea of fraud in the procurement of the contract of 20 November, 1930, which is the main subject of the controversy? We think so. On the present record, this may not be material to the controversy as it discloses that the learned judge in the court below "permitted the case to go to trial upon the further defense in the answer of the defendant, Nona S. Hanes, and the replies of the plaintiffs and the other defendants." We think the parties under the facts and circumstances of this case could not submit to a voluntary nonsuit. It is contended by the parties other than Nona S. Hanes that, in her prayer, she did not ask for affirmative relief.

The prayer for relief does not determine the scope of a party's right to relief. In *Herring v. Lumber Co.,* 159 N. C., 382 (388), speaking to the subject: "The form of the prayer for judgment is not material. It is the facts alleged that determine the nature of the relief to be granted." *Baber v. Hanie,* 163 N. C., 588 (590); *Lipe v. Trust Co., ante,* 24; N. C. Practice and Procedure in Civil Cases (McIntosh), sec. 489, p. 517; C. S., 549.

The affirmative facts set up by Nona S. Hanes—direct and circumstantial—indicate fraud as the relief sought. It is not an action for reformation, where it must be alleged and shown by evidence clear, strong and convincing. The purpose is not to reform, but to set aside the instrument for fraud and the affirmative facts must be shown by the greater weight of the evidence. *Ricks v. Brooks,* 179 N. C., 204 (207); 32 C. J. (Injunctions), p. 357, part sec. 594.

In N. C. Practice and Procedure in Civil Cases (McIntosh), *supra,* at pp. 701, 702, part sec. 629, is the following: "While the plaintiff may generally elect to enter a nonsuit, 'to pay the costs and walk out of court,' in any case in which only his cause of action is to be determined, although it might be an advantage to the defendant to have the action

proceed and have the controversy finally settled, he is not allowed to do so when the defendant has set up some ground for affirmative relief, or some right or advantage of the defendant has supervened, which he has the right to have settled and concluded in the action. . . . If the defendant has some equitable right involved in the controversy which he has a right to have determined, the plaintiff will not be allowed to defeat it by nonsuit." *Shearer v. Herring,* 189 N. C., 460; *Ins. Co. v. Griffin,* 200 N. C., 251.

The next and material question is: Whether the court below erred in holding that there was not sufficient evidence of fraud to be submitted to the jury on the affirmative facts alleged by Nona S. Hanes? We think there was sufficient evidence.

The main controversy in this case is whether the contract of 20 November, 1930, was procured by fraud. The defendant, Nona S. Hanes, alleged in her answer that it was fraudulently made. The plaintiffs denied this. If it was not fraudulently made, the defendants, Prudential Insurance Company and Wachovia Bank and Trust Company, trustee, were vitally interested as the contract signed by W. M. Hanes and Nona S. Hanes, which provides on their part: "contracts, covenants and agrees to pay, renew or handle in a manner satisfactory to both parties each and every encumbrance against said properties as the same become due," *et cetera.*

W. M. Hanes and Nona S. Hanes, under this contract—if the same was valid—became the "principal debtor" to the Prudential Insurance Company. *Baber v. Hanie, supra:* "Nor is the mortgagor and the grantee at liberty thereafter to rescind said agreement without the consent of the mortgagee." *Bank v. Page, ante,* 18.

The defendant, Nona S. Hanes, set up the facts to show fraud in the procurement of the contract made with plaintiffs, the Prudential Insurance Company and the Wachovia Bank and Trust Company, trustee, by amendment to its answer "got in the boat" with plaintiffs. If the boat is sound, then the parties can recover on the deficiency some $40,000 from Nona S. Hanes, as the property did not bring at the sale by the commissioner, the debt, by $40,000. If the boat is rotten and leaky—in other words, procured by fraud—and so found by a jury, these parties get nothing. Neither they nor plaintiffs could take a voluntary nonsuit.

As to the sufficiency of fraud, on the allegations of Nona S. Hanes in her answer and the evidence on the trial, we will not go into same at great length as the case goes back for a new trial when all the evidence by the parties to this controversy will be submitted to a jury. In *Hodges v. Wilson,* 165 N. C., 323 (328 and 329), it is said: *"Lord Hardwicke* has, perhaps, given us the best classification of fraud such as will invalidate a deed or contract, in *Chesterfield v. Janssen,* 1 Atk., 301, 1 Lead. Cases

in Equity, star page 341 (4 Am. Ed., 773): (1) Fraud arising from the facts and circumstances of imposition; (2) Fraud arising from the intrinsic matter of the bargain itself; (3) Fraud presumed from the circumstances and condition of the parties contracting; (4) Fraud affecting third persons not parties to the transaction. Bispham on Equity (5 ed.), sec. 24. . . . Whatever be the cause of the mental weakness—whether it arises from permanent injury to the mind, or temporary illness, or excessive old age—it will be enough to make the court scrutinize the contract with a jealous eye; and any unfairness or overreaching will be promptly redressed."

On the issue of fraud, a latitude is permitted and every material circumstance is a link in the chain of evidence. The evidence tended to show that plaintiff, J. A. Bolich, Jr., was a business associate and deeply interested since 1925 in properties, with W. M. Hanes—and a friend. In *Abbitt v. Gregory,* 201 N. C., 577 (598), is the following: "In Pomeroy's Equity Jurisprudence, Vol. 2, sec. 956 (3d ed.), it is said: 'Courts of equity have carefully refrained from defining the particular instances of fiduciary relations in such a manner that other and perhaps new cases might be excluded. It is settled by an overwhelming weight of authority that the principle extends to every possible case in which a fiduciary relation exists as a fact, in which there is confidence reposed on one side, and the resulting superiority and influence on the other. The relation and the duties involved in it need not be legal; it may be moral, social, domestic or merely personal.' "

The evidence on the part of Nona S. Hanes was further to the effect that in 1915, W. M. Hanes contracted pulmonary tuberculosis. From that time until he died in April, 1931, he had this malady. He stayed for long periods of the year, at Saranac Lake, N. Y., on account of the disease and was there for many years. In June, 1930, he was in Winston-Salem and had a hemorrhage and was confined to his bed under the care of nurses and doctors and in July was getting around at his home in a rolling chair. On 2 August, he had another hemorrhage and was confined to his bed until about 18 August, he then had a doctor and two nurses. In October, he was getting along fairly well, but had breakfast in bed and did not get up until about noon, was able to sit up on his sun porch in a rolling chair and able to ride in his car—someone driving him. The contract signed and alleged by Nona S. Hanes, to be fraudulent was on 20 November, 1930.

Dr. S. F. Pfohl, the family physician of W. M. Hanes, testified in part: "Had occasion to treat him from time to time between the years 1925 and his death, in 1931. He suffered from pulmonary tuberculosis. His condition from 1926, until his death was progressively getting worse all of the time. I saw him off and on from June, 1930, until his death.

I think he was very weak during the summer from June, 1930. I know that he had hemorrhages during that time, but I don't recall the dates. I don't remember how many, but quite a number. . . . I have an opinion satisfactory to myself as to the fact of Mr. Hanes' physical condition between 1 July and 31 December, 1930, upon his business judgment and capacity to weigh and determine business matters. I think he was not capable of exercising good judgment on account of his physical condition. In my opinion, this condition continued from 31 December until the date of Mr. Hanes' death. . . . After he came back in 1928, I don't think he would have had good sound judgment in transacting business. A general weakness can affect your mind. Tuberculosis is an affection of the lungs."

Dr. S. D. Craig testified, in part: "I saw him during the summer and fall of 1930, and up until his death, in 1931. I don't recall how frequently. I saw him rather frequently. He was very ill."

When the contract of 20 November, 1930, was signed, the evidence was to the effect that plaintiffs and others were in the home of W. M. Hanes. A notary public was taken with them. The testimony of Nona S. Hanes as to her physical and mental condition in August, September and October, 1930, coupled with the extreme illness of her husband, W. M. Hanes, was competent. This prior illness of hers and burdened, no doubt, by long years of physical stress and mental anxiety, was a circumstance to be considered by the jury on the question of fraud in her signing the contract. She spoke of getting her lawyers—"they answered me that it was nothing more than showing Mr. Hanes' legal interest in all of this property." Yet, the contract was to the effect that the Haneses assumed some $357,000 of indebtedness on the properties. Nona S. Hanes' testimony, in part: "Mr. Hanes was too tired to sit up much longer after it was over with, and they left. . . . Mr. Bolich and Mr. Edwards both pictured it in what they said—I don't know how else to express it—as being a very prosperous piece of property and that it had good lessees and in the years to come Mr. Bolich said it would have a great rental. Mr. Edwards and Mr. Bolich both told me that the leases, which were in the future, so many years leases on them which would be in the future, would be, but it was more than they represented on the paper to me, because they would increase. They looked very good. Mr. Edwards said that he was very pleased with Mr. Blick, that he knew of his financial standing as the largest bowling alley man in the United States. He said that the bowling alley lease was for twenty years; that the first ten years was for $10,000 and the second ten years for $13,000 a year. Mr. Edwards and Mr. Bolich both told me all that. Mr. Bolich laughingly made the remark that in five years it would be worth millions on Fourth Street. . . . They said that the rents were

taking care of all of the expenses of that property and there was still a profit of around four or five thousand dollars, after all expenses were taken out; that the leases were taking care of it all; I mean the rents taking care of the leases."

Nona S. Hanes contends that these representations were untrue: "Yesterday I said that Mr. Edwards agreed with what Mr. Bolich told me and he told me about the renters. I didn't testify yesterday that I relied on Mr. McKeithan, but that I did rely on you, Mr. Bolich and Mr. Edwards, on the statements that you all made to me. I did swear on 23 February 'I signed that because my desperately sick husband asked me to sign and not because I knew exactly what was in it.' I was taking Mr. Bolich's and yours and Mr. Edward's words and statements you made to Mr. Hanes and me, and I never would question a thing my husband asked me to do. I said that because I did not want to sign it. I said I would sign it under protest, didn't want to get involved in business, and then Mr. Bolich and they said I wouldn't get involved in business; that he expected to carry on just as he had been carrying on. May I add something to my last sentence? He asked me why I said I would sign it because my desperately sick husband asked me to. I said I had signed it because my desperately sick husband had asked me to."

During the period Hanes and Bolich were business associates, Bolich on 4 April, 1926, wrote Hanes when at Saranac Lake, N. Y., and signed "Sincerely your friend, Lon Bolich. . . . I have never seen things look as good here as they do now and particularly Fourth Street. . . . I want you to remember and see if it comes true. It is this; that before 1935 our Englewood property will be worth two million dollars. Now watch what I tell you and see if I am not right."

C. R. Wharton, was one of W. M. Hanes' attorneys. He testified, in part: "I had some conversation with Mr. Bolich and Mr. Hanes during the year 1928, or 1929. In consequence of a message I received from Mr. Hanes, I came over from Greensboro to Mr. Hanes' home and met with him and Mr. Bolich. The matter that was under discussion at that conference was the Fourth Street property. I only know it by that designation, the Fourth Street property. In that conference both Mr. Hanes and Mr. Bolich told me that the property in question was in the name of Mr. Bolich and that they each had a half interest in it. Mr. Bolich said that he had some sort of claim, arising out of a real estate transaction, as I recall it, in Florida, against him and that he was afraid he was going to have a judgment taken against him and he thought that it was necessary and advisable for the property to be conveyed to Mr. Hanes. Then there was a discussion as to the terms upon which the property should be conveyed, if it were conveyed."

In handling all of the properties by Bolich before the contract was signed, the record seems to disclose that no itemized statement was given the Haneses although hundreds of thousands of dollars were involved—except the memoranda on the *"Hanes Poultry Farm"* stationery, which showed a $290.00 loss. "That paper, they assured me the rents were taking care of the property. Mr. Edwards said they were all good lessees. Mr. Bolich told me they were good lessees and these were the rents, and Mr. Edwards said yes, they would increase."

She contends that these representations were untrue. We think the testimony of the auditor competent under the facts and circumstances of this case. *Helms v. Green,* 105 N. C., 251 (265). In *Unitype Co. v. Ashcraft,* 155 N. C., 63, it is said at page 66: "There have recently been several cases of this kind before the Court, and we have held that while expressions of opinion by a seller, amounting to nothing more than mere commendation of his goods—puffing his wares, as it is sometimes called—or extravagant statements as to value or quality or prospects, are not, as a rule, to be regarded as fraudulent in law, yet 'when assurances of value are seriously made, and are intended and accepted and reasonably relied upon as statements of fact, inducing a contract, they may be so considered in determining whether there has been a fraud perpetrated; and though the declarations may be clothed in the form of opinions or estimates, when there is doubt as to whether they were intended and received as mere expressions of opinion or as statements of facts to be regarded as material, the question must be submitted to the jury.' 14 A. & E., 35; 20 Cyc., 124; *Morse v. Shaw,* 124 Mass., 59; *Whitehurst v. Ins. Co.,* 149 N. C., 273; *Register Co. v. Townsend,* 137 N. C., 652."

In *Pritchard v. Dailey,* 168 N. C., 330, the representations were termed "promissory representations." On this record we think the evidence direct, circumstantial and by inference shows that they were more than promissory under the facts and circumstances of this case. *McNair v. Finance Co.,* 191 N. C., 710; *Clark v. Laurel Park Estates,* 196 N. C., 624. Of course the usual elements of fraud govern the case. First, there must be a misrepresentation or concealment; second, an intention to deceive, or negligence in uttering falsehoods with the intent to influence the action of others; third, the misrepresentations must be calculated to deceive and must actually deceive; and fourth, the party complaining must have actually relied upon the representations.

Of course, Nona S. Hanes is bound by the well settled rule that is laid down in *May v. Loomis,* 140 N. C., 350 (359): "In order to rescind, however, the party injured must act promptly and within a reasonable time after the discovery of the fraud, or after he should have discovered it by due diligence; and he is not allowed to rescind in part and affirm

in part; he must do one or the other. And as a general rule, a party is not allowed to rescind where he is not in a position to put the other in *statu quo* by restoring the consideration passed. Furthermore, if, after discovering the fraud, the injured party voluntarily does some act in recognition of the contract, his power to rescind is then at an end." *McNair, supra.* We think on the whole record, the evidence indicates that the plaintiff Bolich, in the transactions, was the agent of his wife. For the reasons given, the judgment of the court below is

Reversed.