LEE BRADSHER v. EULA MORTON, WIDOW, JAMES H. MORTON, ARTHUR C. SMITH AND BEATRICE MORTON, ADMINISTRATOR AND ADMINISTRATRIX OF THE ESTATE OF JAMES MORTON, DECEASED.

(Filed 10 December, 1958.)

**1. Reference § 10—**

In reviewing exception to the referee's findings of fact and conclusions of law, it is the duty of the judge of the Superior Court to consider the evidence and make his own findings and conclusions, which he may do by affirming or modifying the findings and conclusions of the referee.

**2. Appeal and Error § 49—**

On appeal to the Supreme Court from judgment of the Superior Court in reference proceedings, the sole questions presented are whether the facts found by the judge are supported by competent evidence and whether such findings are sufficient to support the judgment.

**3. Bailment § 3— Evidence held sufficient to support finding that gratuitous bailee had repaid all money entrusted to his care.**

Evidence tending to show that deceased, over a period of years, was permitted to deposit and withdraw monies from plaintiff's safe, receiving receipts therefor, that upon withdrawals, the receipt corresponding to the sum withdrawn was removed and stuck on a filing wire, that the sum remaining after subtracting the total of the perforated receipts from the total receipts, was paid to the administrator of deceased, that such sum was substantially the same as shown to be due by an account book, kept by plaintiff's son in the course of the transactions, with other corroborative evidence, *is held* sufficient to support the referee's finding that nothing was due from plaintiff to the estate.

**4. Money Received §§ 1, 3— Evidence held sufficient to support finding that payment was not voluntary.**

Evidence tending to show that plaintiff paid the total balance he acknowledged to be due intestate to intestate's personal representatives, that the beneficiaries of the estate claimed a large additional amount to be due, and made repeated demands upon plaintiff and threatened to "take further steps" if the additional amount were not paid, that plaintiff, who was unlettered, old and ill, was greatly worried by the demands, and paid the additional sum to maintain peace in the family, stating that he did not owe the money but for defendants to take it and bring it back after they had found out it wasn't their money, *is held* sufficient to support the referee's finding that the payment of the additional sum was not voluntary.

**5. Same: Duress—**

An unjust payment loses its voluntary character if it is brought about by fraud, duress or undue influence, and the health, age and mental condition of the person making the payment are properly considered in determining whether the payment was made under duress.

**6. Appeal and Error § 49—**

The referee's findings of fact, approved by the trial court, are conclusive on appeal if supported by competent evidence even though incompetent evidence may also have been admitted, since it will be presumed that the findings were based on the competent evidence. It is only when all of the evidence supporting a finding is incompetent that such finding should be set aside on appeal.

**7. Evidence § 11—**

Where the personal representative introduces evidence as to a personal transaction with decedent, he opens the door for the admission of evidence relating otthe transaction by the adverse party.

PARKER, J., not sitting.

APPEAL by defendants from *Hobgood, J.,* in Chambers, April 5, 1958, PERSON Superior Court.

Civil action to recover $20,000.00 alleged to have been paid under duress. The pleadings consist of the complaint, the answer and counterclaim, and the reply.

In subsections (b) and (c) under Paragraph 15 of the complaint, the plaintiff stated the essence of his cause of action:

"(b) That by the aforesaid acts of undue influence, fraud and deceit, practiced in concert against the plaintiff who was unable to resist such acts because of his age and physical condition, the defendants extorted $20,000.00 from the plaintiff without just cause or reason and that equity should not allow these defendants to retain said $20,000.00, or any part of it, no money being due and owing by the plaintiff to said defendants for any reason whatsoever.

"(c) That the consideration which the plaintiff sought, and which the defendants agreed to give, for his payment of said $20,000.00 to defendants was relief from the harassment to which he had been subjected, as set out hitherto, and a discharge in full from the defendants' wrongful claims; that by continuing such harassment, undue influence, threats, and prosecution, the defendants have failed to render the consideration for which the plaintiff paid them the said $20,000.00, and that in equity these defendants should not be allowed to retain said $20,000.00, or any part of it."

The defendants, by answer, admitted the receipt of $20,000.00, but denied the payment was wrongfully exacted. They set up a counter-claim, the substance of which is:

"(1) That the said decedent, James Morton, and Lee Bradsher, brothers-in-law, having been friends over a long and continuous length of time, agreed for the decedent James Morton to deposit such monies as he wished to save in Lee Bradsher's safe located on his premises; that, following this agreement and for a period of approximately over 30 years, the decedent made deposits in Lee Bradsher's safe with the plaintiff, Lee Bradsher, in the total sum of $63,668.35, of which the defendants have received $31,-600.00, which sum the defendants allege, on information and belief, was the only amount ever received by the decedent James Morton or by his administratrix and administrator, or any member of his family, both during his lifetime or since his demise."

The defendants pray judgment on the counterclaim for $32,068.85. The plaintiff, by a reply, denied the counterclaim.

Upon the defendants' motion, the court referred the case to L. H. Mount, referee, who conducted hearings for several days. The record contains 250 pages. The referee's findings of fact are in great detail. The following excerpts from them will serve to show the heart of the controversy:

"3. That the plaintiff, Lee Bradsher, is a colored man 76 years

of age, who resides in Bushy Fork Township, Person County; that he has no formal education and is unable to read or write except to a very limited degree; that he has resided in Bushy Fork Township all of his life, owns approximately 500 acres of land with a 34-acre tobacco allotment and has reared 13 children of his own and several children other than his own; that he has an outstanding reputation for truth, honesty and influence in his community.

"5. That the plaintiff, Lee Bradsher, and James Morton, deceased, were lifelong friends; were married to sisters and throughout the years enjoyed a relationship of the greatest trust and confidence.

"8. That about the year 1918, the plaintiff purchased a small safe and it became the custom of James Morton, deceased, the brother-in-law of the plaintiff, to deposit sums of money in the safe for safekeeping; that about the year 1938, the plaintiff, Lee Bradsher, purchased a larger safe; that the plaintiff did not learn the combination to this safe but placed it in the exclusive control of his eldest son, Walter Bradsher; that James Morton, deceased, continued to deposit money from time to time and to make periodic withdrawals from the safe; that the plaintiff, Lee Bradsher, requested his son Walter Bradsher to cease accepting deposits of James Morton's money; however, throughout the years he was aware that James Morton continued to make deposits and withdrawals of money; that when James Morton made a deposit of money in the safe, Walter Bradsher would customarily give him a receipt on which he would sign the name of the plaintiff, Lee Bradsher, and his own name as witness;

"9. That James Morton died suddenly on Saturday, February 25, 1956, and on Sunday or Monday following, the defendant Eula Morton and members of the Morton family came to the home of the plaintiff, Lee Bradsher, together with the defendant Arthur C. Smith, to ascertain the amount of the deceased's money there was in the safe owned by the plaintiff; that a count of the money revealed the amount to be $11,600.00; that the defendant Arthur C. Smith withdrew the amount of $5,100.00 and left in the custody of the plaintiff the amount of $6,500.00; that the plaintiff's son Walter Bradsher gave the defendants a receipt in the sum of $6,500; that subsequently, on or about the 19th day of March, 1956, the defendant Arthur C. Smith, with others of the Morton family, returned and obtained the remaining $6,500.

"12. That at the time of the meeting set forth in paragraph 10 and during the period of demands and negotiations, Lee Brad-

sher, an illiterate, colored man, 76 years or age who, ill, irrational and worried, was willing to do anything to keep peace in the family and his good reputation in the community; the plaintiff had not actively engaged in his business for more than ten years and all his business affairs had been handled by his son Walter Bradsher.

"18. That further demands were made by the defendants through the defendant Arthur C. Smith and that on or about the 16th day of April, 1956, the plaintiff paid to the defendants the sum of $10,000.00 in cash and $10,000.00 in cash on the 18th day of April, 1956, over his protest that he did not owe it and with the admonition to the defendants 'for them to bring it back after they got there and seed it wasn't their money.' "

The referee further found, in substance, that all told James Morton deposited in the plaintiff's safe the sum of $50,048.85; and that Morton had withdrawn $38,418; and that the difference between the deposits and the withdrawals accounted for the $11,600 belonging to Morton and taken from the safe by the defendants immediately after his death; that the plaintiff was unlettered, old, and ill, and that under pressure he paid $20,000.00 to the defendants, no part of which was due.

Upon the facts found, the referee adjudged that the plaintiff is entitled to recover $20,000 from the defendants, who were not entitled to recover anything on their counterclaim; and that each party should pay half the costs. Both parties filed exceptions.

The plaintiff excepted to the referee's failure to find (1) that the defendants by continuous pressure and threats so deprived the "ill, worried, and irrational old man" of his judgment, reason, and discretion as to amount to undue influence, thus causing him to pay $20,000.00 he did not owe; and (2) that the plaintiff only paid the $20,000.00 conditionally, with the understanding that after full accounting, if found not to be due it would be returned. The plaintiff further objected to being charged with one-half the costs.

The defendants filed detailed exceptions to the introduction of evidence, especially the book account kept by Walter Bradsher. They also excepted to all material findings of fact in the plaintiff's favor and to the referee's refusal to allow their counterclaim.

At the hearing on the exceptions to the referee's report, Judge Hobgood sustained the plaintiff's exceptions, made findings in accordance with his request as to conditional payment of $20,000.00, and as to the undue influence and pressure under which it was paid. The court overruled defendants' exceptions on all matters material to the result. The court rendered judgment in the sum of $20,000.00 for the

plaintiff, and adjudged that the defendants pay the costs. Subsequent to the hearing on the referee's report, the parties stipulated: (1) That defendants had receipts showing deposits of $50,048.85; (2) that all except $11,360.00 showed perforations; (3) that plaintiff's evidence as testified to by Walter Bradsher was that $38,418.00 had been withdrawn by James Morton.

From the judgment, the defendants appealed.

*Charles B. Wood, R. P. Burns, R. B. Dawes for plaintiff, appellee.*
*M. Hugh Thompson, Donald J. Dorey, William A. Marsh, Jr., for defendants, appellants.*

HIGGINS, J.   This appeal comes to us from a judgment of the superior court which, after review, modified and affirmed findings of fact and conclusions of law made by the referee. Based on the findings, the trial judge ordered the defendants to pay to the plaintiff the sum of $20,000.00, and the court costs.

The referee held hearings over a period of several days. His findings of fact are in great detail. Upon exceptions filed thereto, the trial judge carefully reviewed them and the evidence upon which they were based. He modified some in minor detail and made the additional findings referred to in the statement of facts. "When exceptions are taken to a referee's findings of fact and law, it is the duty of the judge to consider the evidence and give his own opinion and conclusion both upon the facts and upon the law." *Anderson v. McRae,* 211 N.C. 197, 189 S.E. 639.

In passing on the judgment from which this appeal was taken it becomes the duty of this Court to determine two things: (1) Are the facts found supported by competent evidence? (2) Are the facts found to have been thus supported sufficient to support the judgment?

The first essential inquiry relates to the question whether at the time he paid $20,000.00 to the defendant the plaintiff was actually indebted to the defendants' intestate. A number of separate findings of the referee, when combined, answer this question. The evidence in support of the referee's findings that nothing was due comes from different sources. Walter Bradsher, who had charge of his father's safe, testified that at the time of James Morton's death he had $11,600.00 in the safe. He further testified that during the many years he had charge of the safe he kept a book account of all amounts paid to James Morton during his lifetime, and that he had thus paid the sum of $38,418. (The defendants objected to this evidence.) The plaintiff introduced before the referee two disinterested witnesses who testified that shortly before Morton's death he made the statement he had about $11,000.00 in the plaintiff's safe. The

plaintiff also introduced evidence that Morton took receipts for all deposits and from time to time when he made withdrawals he removed a receipt representing the amount of the withdrawal from the other receipts and "stuck" it on a filing wire he kept for that purpose. All receipts showed total deposits of $50,048.85. The receipts with wire perforations amounted to $38,688.85. Thus the unperforated receipts kept for the purpose of showing what was still in the safe amounted to $11,360.00 — slightly less than the amount shown by Walter Bradsher's books and slightly less than the amount turned over to the defendants after the death of their intestate.

Another circumstance tending to show that nothing was due the estate was the failure (as appears from the clerk's records) on the part of the defendants to include the payment in the list of assets belonging to the estate. The evidence is ample to support the findings that the plaintiff, at the time he made the payment which he seeks to have returned to him, was not indebted to the Morton estate.

In order to permit recovery, the plaintiff is required to show that the payment was involuntary. On this question the referee heard much evidence as to the effect the defendants' demands for money had upon the illiterate and worried old man, especially the defendants' claim that they had receipts which showed deposits of more than $50,000.00. With respect to the contested payment, the plaintiff testified: "Yes, I did that because I wanted to relieve this burden. It was not the money burden because I knowed I didn't owe it. The burden was the family and the union that we might have between each other. I was not feared of the people as far as that part goes, but I didn't know what might arise. You take this like I was, then some folks kill folks for a quarter. . . . After he died, I wasn't thinking about nobody going to kill me, and I didn't think I was going to kill nobody, but I had them eight or nine boys and she had two or three. . . . but what I was studying about was hereinafter. I didn't want to die and leave them fighting and me and Jim brothers, . . . It said (the letter from the defendants) we want $18,000, and if you don't pay it . . . we will take further steps . . . That frightened me because I knowed they had my papers."

Members of the plaintiff's family testified he was so worried over the defendants' demands that he was unable to eat. He stated unless he got the trouble settled he would go crazy. The evidence before the referee and the court was sufficient to support the finding the payment here involved was not voluntary, but was made under duress.

In determining whether one acts under duress, "The mental condition of the person acted on must always be taken into consideration. The law does not leave the old, the weak, the ignorant, and the timid

at the mercy of those who would operate on their fears to secure the payment of an unlawful demand." Am. Jur., 40, Sections 161, 162, pp. 825, 826. "Whatever be the cause of the mental weakness— whether it arises from permanent injury to the mind, or temporary illness, or excessive old age — it will be enough to make a court scrutinize the contract with a jealous eye; and any unfairness or overreaching will be promptly redressed." *Bolich v. Ins. Co.,* 206 N.C. 144, 173 S.E. 320. "Undue influence is frequently employed surreptitiously, and is chiefly shown by its results." *In re Thompson's Will,* 248 N.C. 588, 104 S.E. 2d 280.

From the foregoing and other authorities, it may be gathered that an unjust payment loses its voluntary character if it is brought about by fraud, duress, or undue influence. The evidence is sufficient to sustain the findings of the referee, as amended by the court, that the payment of $20,000.00 was obtained by undue influence and pressure which deprived the plaintiff of his "reason and discretion, and caused him to act to his detriment."

Finally, the defendants contend they are entitled to another hearing because the referee and the court considered incompetent evidence admitted over their objection. They say, especially, the book account of Walter Bradsher should have been excluded. While there may be technical objection to some of the evidence, it must be borne in mind that the hearing was being conducted before a referee appointed by the court to make inquiry, to hear evidence, make findings of fact, and state conclusions of law arising thereon—a situation quite different from that which arises in a hearing before a jury. In the nature of things the referee must hear the evidence before he can rule on its competency, whereas the jury is not permitted to hear incompetent evidence. The law recognizes this distinction and only requires that the findings by the referee and by the court be supported by competent evidence. *Bizzell v. Bizzell,* 247 N.C. 590, 101 S.E. 2d 668; *Reid v. Johnston,* 241 N.C. 201, 85 S.E. 2d 114; *Board of Managers v. Wilmington,* 237 N.C. 179, 74 S.E. 2d 749; *Cameron v. Cameron,* 232 N.C. 686, 61 S.E. 2d 913.

We are not unmindful of the holding of this Court in *Thompson v. Smith,* 156 N.C. 345, 72 S.E. 379: "If there is any evidence to support the findings and no error has been committed in receiving or rejecting testimony, and no other question of law is raised with respect to the findings, we accept what the judge has found as final, as we do in the case of a jury." And in *Pack v. Katzin,* 215 N.C. 233, 1 S.E. 2d 566, in passing on a referee's findings, this Court said: "Thereupon, the adoption of these findings by the county court, approved by the superior court, would render the facts so found conclusive and not

open to review upon appeal, unless it be shown the findings were based upon testimony which was incompetent and prejudicial."

"It is settled by all of the decisions on the subject, with none to the contrary, that the findings of fact, made by a referee and approved by the trial judge, are not subject to review on appeal, if they are supported by any competent evidence." *Kenney v. Hotel Co.*, 194 N.C. 44, 138 S.E. 349; *Dorsey v. Mining Co.*, 177 N.C. 60, 97 S.E. 746.

In passing on the referee's findings of fact, the correct rule seems to be to approve them if they are supported by competent evidence. However, if the only evidence upon which they are based is incompetent, they must fail for lack of support, and should be set aside on appeal. If both competent and incompetent evidence is introduced, it will be presumed the findings were based on the competent evidence, and if it is sufficient to support them, the findings will stand.

Questions whether Walter Bradsher's evidence, because of his relationship to the plaintiff, is admissible in his father's suit against the dead man's estate, and whether his book account is admissible as a record under *Flippen v. Lindsey*, 221 N.C. 30, 18 S.E. 2d 824, are immaterial. Both personal representatives testified in detail with respect to the transactions here involved, thus opening the door. *Highfill v. Parrish*, 247 N.C. 389, 100 S.E. 2d 840; *Hayes v. Ricard*, 244 N.C. 313, 93 S.E. 2d 540; *Peek v. Shook*, 233 N.C. 259, 63 S.E. 2d 542.

For the foregoing reasons, the judgment of the Superior Court of Person County is

Affirmed.

PARKER, J., not sitting.