BIG BEAR OF NORTH CAROLINA, INC., BELK-BECK CO., COLO-
NIAL STORES, INC., K & W CAFETERIA, INC., ROSE'S STORES,
INC., WINN-DIXIE FOOD STORES, INC., WAGNER TIRE SERV-
ICE, INC. AND S. S. KRESGE CO. v. THE CITY OF HIGH POINT,
NORTH CAROLINA

No. 7618SC921

(Filed 6 July 1977)

Money Received § 2; Municipal Corporations § 37— fee for garbage col-
lection — unconstitutional ordinance — recovery of fees paid

Payments by plaintiffs to a municipality for garbage collection
pursuant to an unconstitutional ordinance and regulation which re-
quired plaintiffs to provide dumpster boxes and to pay to have the
dumpsters serviced under threat of discontinuance of service were in-
voluntary, and plaintiffs are entitled to recover the fees so paid.

APPEAL by plaintiffs from *Rousseau, Judge.* Judgment en-
tered 25 October 1976 in Superior Court, GUILFORD County.
Heard in the Court of Appeals 7 June 1977.

Pursuant to G.S. 1A-1, Rule 23(a), the plaintiffs brought
this class action against the City of High Point (the City) to
recover money paid to the City for collecting garbage. The facts
are stipulated and show the following: Prior to 21 January
1971, the City collected the plaintiffs' trash and garbage. Plain-
tiffs provided their own large rectangular metal receptacles
("dumpster boxes"), but the City did not charge the plaintiffs
anything for this service. Effective 21 January 1971 the City
enacted a new ordinance which said:

"Sec. 10-6. Same—Establishments to provide an approved
covered box.

"(a) The director of public works is authorized to deter-
mine the type, size, number and location of containers for
the collection of garbage, trash, waste or other refuse, and
the failure to comply with the director of public works' in-
structions as to same shall result in discontinuance of
garbage, waste or trash collection service.

"(b) All persons, firms or corporations, except single
family residences, apartments and public schools, desiring
or required by the director of public works to have dump-
ster boxes shall pay a fee of four dollars ($4.00) each time
the dumpster box is serviced, said fee shall be billed monthly,

and failure to pay the bill within ten (10) days shall result in a discontinuance of service."

Pursuant to his authority under Sec. 10-6(a) the City's director of public works promulgated a regulation which required that all persons, firms and corporations which generate more solid waste than can be adequately handled by three thirty-gallon garbage containers serviced twice a week (*i.e.*, which generate more than 180 gallons of solid waste a week) and which are located on the City's dumpster service routes *must* provide themselves with dumpster boxes.

Plaintiffs generate more than 180 gallons of solid waste each week and are on the City's dumpster service routes. Therefore, since 21 January 1971 the plaintiffs have been required to provide dumpster boxes and pay to have them serviced. Failure either to provide dumpster boxes or to pay for the collection service would result in loss of all garbage removal by the City. The record does not show whether private companies collect garbage in the City of High Point.

When the City enacted the ordinance, the plaintiffs protested, saying that it was unconstitutional because, among other reasons, it delegated unrestricted authority to the director of public works to determine who would have to use dumpster boxes and, therefore, have to pay for garbage and trash collection. From the time the ordinance was enacted until 7 August 1971, the plaintiffs refused to pay the service charge. On that date the City discontinued service. On August 9 the plaintiffs, under protest, paid all past due fees, and the City resumed collection. Plaintiffs have continued to pay, and the City has continued to service the dumpsters. To date the plaintiffs have paid more than $55,000 in fees to the City.

On 19 January 1972 the plaintiffs filed suit against the City seeking to have Sec. 10-6 of the Code of Ordinances declared unconstitutional. Judgment was entered 24 November 1975 on the stipulated facts set forth above. All of Sec. 10-6(a) plus the clause in Sec. 10-6(b) which reads " . . . or required by the director of public works . . . , " were declared unconstitutional. The City elected not to appeal this decision. The issue of damages was severed and deferred for a future trial.

On 25 October 1975, the court entered judgment on the question of damages. The judgment provides, in pertinent part:

## "FINDINGS OF FACT

"1. Prior to January 21, 1971, the Plaintiffs voluntarily purchased and provided 'dumpster boxes', which the City of High Point serviced free of charge.

"2. [The constitutionally valid part of Section 10-6(b)] reads as follows:

> (b) All persons, firms or corporations, except single family residences, apartments and public schools, desiring to have dumpster boxes shall pay a fee of four dollars ($4.00) each time the dumpster box is serviced, said fee shall be billed monthly and failure to pay the bill within ten (10) days shall result in a discontinuance of service.

"3. The fees paid by the Plaintiffs are reasonable.

"4. Plaintiffs desired the dumpster service by the City of High Point.

## "CONCLUSIONS OF LAW

"1. [Section 10-6(b) is constitutionally valid.]

"2. Payments by Plaintiffs to Defendant of dumpster box service charges under the amended ordinance (Chapter 10, Article I, Section 10-6(b)) were valid.

"3. Plaintiffs have failed to establish that they were *required* under the invalid provision of the ordinance to have dumpster boxes.

"4. Plaintiffs have not shown that they ever requested the City not to service their boxes which they could have done under Chapter 10, Article I, Section 10-2 of the Code of Ordinances of the City of High Point.

"NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

"1. That this action be dismissed."

From this judgment the plaintiffs appeal.

*Morgan, Byerly, Post, Herring & Keziah, by W. B. Byerly, Jr., for plaintiff appellants.*

*Knox Walker for defendant appellee.*

ARNOLD, Judge.

Plaintiffs assign error to the findings of fact and conclusions of law by the trial court. They argue that payments for collection of trash and garbage were under such compulsion or coercion as to make the payments involuntary. The City's position is that since plaintiffs had voluntarily purchased the dumpster boxes prior to enactment of the ordinance the only involuntary act by plaintiffs was the payment of the fees, and that the portion of the ordinance requiring payment of fees for dumpster services was not found to be invalid.

As a general rule one, who, because he is coerced, pays money which he does not owe, may recover it. *Bradsher v. Morton,* 249 N.C. 236, 106 S.E. 2d 217 (1958) ; 5 Strong's N. C. Index 2d, Money Received § 1 (1968). However, money paid voluntarily and with full knowledge of the facts cannot be recovered even where there is no debt. *Thompson v. Shoemaker,* 7 N.C. App. 687, 173 S.E. 2d 627 (1970).

Plaintiffs cite no North Carolina cases which permit recovery from a municipality of unowed money paid to it under threat of discontinuance of a service, such as trash collection. However, there is authority from other jurisdictions which supports the recovery of such money. *Bettini v. City of Las Cruces,* 82 N.M. 633, 485 P. 2d 967 (1971) ; *City of Chicago v. Northwestern Mut. Life Ins. Co.,* 218 Ill. 40, 75 N.E. 803 (1905) ; *St. Louis Brewing Ass'n v. City of St. Louis,* 140 Mo. 419, 37 S.W. 525 (1896) ; Cf. *Farrell v. Ward,* 53 A. 2d 46 (D.C. 1947). There is also some support for this principle in North Carolina cases which permit unlawful taxes to be recovered if they were paid involuntarily and under protest. G.S. 105-267; *Middleton v. R. R.,* 224 N.C. 309, 30 S.E. 2d 42 (1944).; *Blackwell v. Gastonia,* 181 N.C. 378, 107 S.E. 218 (1921). We see no material difference between taxes levied to fund general governmental operations and fees charged to provide compensation for a particular important municipal service, such as trash and garbage collection.

Evidence does not support Finding of Fact No. 4 that plaintiffs "desired the dumpster service by the City of High

Point." The term "desired" was obviously used by the court in the context of Sec. 10-6(b) of the City Ordinance that those " . . . desiring to have dumpster boxes shall pay a fee . . . " for collection. However, an examination of the original ordinance reveals that "desiring" is a participle which modifies a group of persons, firms or corporations who "shall pay a fee of for dollars ($4.00) each time the dumpster box is serviced." Such persons, firms or corporations could desire a dumpster box as a trash receptacle and still not desire the City's "dumpster box service." More importantly, plaintiffs were among those who were *required* by the invalid ordinance and regulation to have dumpster boxes. It is irrelevant that prior to 21 January 1971 the plaintiffs voluntarily used the boxes (Finding of Fact No. 1) because prior to that time the City charged no fee to service the dumpster boxes.

Since the evidence fails to support Finding of Fact No. 4 there is no support for the trial court's Conclusion of Law No. 3 that "[P]laintiffs have failed to establish that they were required under the invalid provisions of the ordinance to have dumpster boxes." Plaintiffs in fact were required by Sec. 10-6(a) and the regulation thereunder to have dumpster boxes, and, according to the record, after 21 January 1971 plaintiffs did not desire the City's dumpster service for which they had to pay a fee. The facts are that plaintiffs desired the service as it was furnished, without a fee, prior to enactment of the ordinance.

The court's Conclusion No. 4 that plaintiffs failed to show that they requested the City not to service the boxes, as plaintiffs could have done under another section of the ordinance, misses the point. While the record is silent here, it can be presumed that plaintiffs could have hauled away their own trash, or contracted with someone else to haul it away. However, if it was coercion for the City to force plaintiffs to pay the City fees under color of an unconstitutional ordinance, then it also would be coercion for the City, by discontinuing service, or threatening to discontinue service, to force plaintiffs to pay the extra cost to a private contractor, or increase their own cost, when but for the unconstitutional ordinance the City would have performed the service at no extra cost to plaintiffs.

For reasons already stated, Conclusion No. 2 that payments made by plaintiffs to the City were valid cannot be

supported. These payments were involuntary and can be recovered by plaintiffs. Judgment is reversed, and the case is remanded to Superior Court of Guilford County for entry of judgment in favor of plaintiffs.

Reversed and remanded.

Judges BRITT and VAUGHN concur.