KATHY F. GOODWIN, PLAINTIFF-APPELLANT v. WILLIAM R. WEBB, JR., AS EXECUTOR OF THE ESTATE OF CLAUDIUS KRESS GOODWIN, DECEASED, DEFENDANT-APPELLEE

No. COA01-1063

(Filed 3 September 2002)

**Divorce— separation agreement—ratification**

The trial court erred by granting summary judgment for defendant as to plaintiff's ratification of a separation agreement where there was evidence from which a jury could find that plaintiff signed the agreement under duress which continued until her husband's death, an affidavit from a psychologist could lead to the conclusion that plaintiff lacked full understanding of the agreement and was thus incapable of ratifying it, and plaintiff's deposition testimony was equivocal regarding her understanding of the agreement.

Judge GREENE dissenting.

## GOODWIN v. WEBB

[152 N.C. App. 650 (2002)]

Appeal by plaintiff from order entered 4 June 2001 by Judge C. Preston Cornelius in Anson County Superior Court. Heard in the Court of Appeals 4 June 2002.

*Baucom, Claytor, Benton, Morgan & Wood, P.A., by Rex C. Morgan, for plaintiff-appellant.*

*Etheridge, Moser, Garner, Bruner & Wansker, P.A., by Terry R. Garner, for defendant-appellee.*

BIGGS, Judge.

Plaintiff (Kathy Goodwin) appeals from an order granting summary judgment in favor of defendant (William Webb), Executor of Estate of Claudius Goodwin (Goodwin), deceased. For the reasons that follow, we reverse.

Plaintiff and Goodwin were married in 1974. They separated in 1999, executed a "Separation and Property Settlement Agreement" (the agreement) on 10 February, 1999, and were separated at the time of Goodwin's death in December, 1999. On 1 May 2001, plaintiff filed a complaint against defendant, seeking to set aside the agreement. Plaintiff alleged that her execution of the agreement was procured by coercion, duress, threats of physical abuse, mental abuse, and undue influence by Goodwin. She sought a dissenting spouse's share, and a year's allowance from Goodwin's estate. In his answer, defendant denied plaintiff's allegations and raised the defenses of laches, ratification, and estoppel. On 14 May 2001, defendant filed a motion seeking summary judgment, on the grounds that due to plaintiff's ratification of the agreement, she was estopped from challenging its validity. On 4 June 2001, the trial court granted defendant's motion for summary judgment. Plaintiff appeals from this order.

### Standard of Review

Summary judgment is only proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, 56(c) (2001); *Department of Transp. v. Idol*, 114 N.C. App. 98, 100, 440 S.E.2d 863, 864 (1994). "Summary judgment is a drastic remedy. Its purpose is not to provide a quick and easy method for clearing the docket, but is to permit the disposition of cases in which there is no genuine controversy concerning any fact, material to issues raised by the pleadings, so that the litigation

involves questions of law only." *Savings & Loan Assoc. v. Trust Co.*, 282 N.C. 44, 51, 191 S.E.2d 683, 688 (1972). Summary judgment should therefore "be cautiously used so that no one will be deprived of a trial on a genuine, disputed issue of fact. The moving party has the burden of clearly establishing the lack of triable issue, and his papers are carefully scrutinized and those of the opposing party are indulgently regarded." *Koontz v. City of Winston-Salem*, 280 N.C. 513, 518, 186 S.E.2d 897, 901 (1972). Moreover, "Rule 56 does not authorize the court to decide an issue of fact, but rather to determine whether a genuine issue of fact exists." *Caldwell v. Deese*, 288 N.C. 375, 378, 218 S.E.2d 379, 381 (1975). If issues of material fact are in controversy, summary judgment is not appropriate. *Dockery v. Quality Plastic Custom Molding, Inc.*, 144 N.C. App. 419, 547 S.E.2d 850 (2001).

On appeal, this Court's standard of review involves a two-step determination of whether (1) the relevant evidence establishes the absence of a genuine issue as to any material fact, and (2) either party is entitled to judgment as a matter of law. *Von Viczay v. Thoms*, 140 N.C. App. 737, 738, 538 S.E.2d 629, 630 (2000), *aff'd*, 353 N.C. 445, 545 S.E.2d 210 (2001) (citations omitted). Further, "the evidence presented by the parties must be viewed in the light most favorable to the non-movant." *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998).

---

Plaintiff argues that the evidence presented genuine issues of material fact with respect to her ratification of the agreement, and, therefore, that the trial court erred by granting defendant's summary judgment motion. We agree.

Plaintiff alleged that her execution of the agreement was obtained under duress. A separation agreement executed while a party is acting under duress is invalid and can be set aside. *Cox v. Cox*, 75 N.C. App. 354, 356, 330 S.E.2d 506, 508 (1984). Duress occurs when a party is induced to perform or forego some act under circumstances depriving her of the exercise of her free will. *Link v. Link*, 278 N.C. 181, 194, 179 S.E.2d 697, 704-05 (1971).

In the instant case, plaintiff offered the following evidence in support of her contention that she signed the agreement under duress and that the duress continued until Goodwin's death: Forrest Hildebrand, a friend of both plaintiff and Goodwin, testified by deposition that Goodwin told him that he forced Plaintiff to sign the Agreement by threatening that "if she didn't sign the papers he was

going to beat the hell out of her." In addition, plaintiff testified by deposition that Goodwin threatened plaintiff throughout their marriage, that he had frequently beaten her, and that during the weeks before she signed the Agreement, Goodwin told plaintiff if she did not sign the Agreement, he would "beat the hell out of [her]." Plaintiff also filed an affidavit stating that even after signing the Agreement, and until the time of Goodwin's death, she "still feared that . . . Goodwin would physically harm [her] or have someone physically harm [her] if [she] did not comply with the . . . Agreement or did something to legally affect the . . . Agreement."

In addition, plaintiff submitted the affidavit of Faye E. Sultan, Ph.D. (Dr. Sultan) who had performed a clinical evaluation of plaintiff. Dr. Sultan opined "to a reasonable degree of psychological certainty that [Plaintiff] was convinced that she had no choice but to sign the . . . Agreement . . . or risk physical assault and abuse from [Goodwin]." She also stated that the "physical and mental abuse which [plaintiff] had endured during her 25-year marriage left her unable to contest the provisions of the . . . Agreement even after it had been signed," as she was "fearful of repercussions from [Goodwin] if she contested the [A]greement, even during the time that he was sick and in the hospital and up until the time of his death." We conclude that there was evidence presented from which a jury could find that plaintiff signed the agreement under duress, which continued until Goodwin's death.

"[A] transaction procured by duress may be ratified by the victim so as to preclude a subsequent suit to set [it] aside." *Link v. Link*, 278 N.C. 181, 197, 179 S.E.2d 697, 706 (1971). A party ratifies an agreement by retroactively "authoriz[ing] or otherwise approv[ing] [of it], . . . either expressly or by implication." Black's Law Dictionary 1262 (6th ed. 1990). However, "there [can] be no ratification so long as the duress continue[s]." *Housing, Inc. v. Weaver*, 37 N.C. App. 284, 300, 246 S.E.2d 219, 228 (1978).

Moreover, "an act of the victim . . . will not constitute a ratification of the transaction . . . unless, at the time of such act, the victim had full knowledge of the facts and was then capable of acting freely." *Neugent v. Beroth Oil Co.*, 149 N.C. App. 38, 55, 560 S.E.2d 829, 840 (2002) (quoting *Link, id.*) (summary judgment based on ratification improper where "[v]iewing the evidence in the light most favorable to plaintiff, plaintiff did not have full knowledge of all material facts"). *See also Fallston Finishing, Inc. v. First Union Nat. Bank*, 76 N.C. App. 347, 363, 333 S.E.2d 321, 330 (1985), (directed verdict improper

where there was "sufficient evidence from which the jury could find that . . . [plaintiff] did not have the mental capacity to understand the consequences of his actions"). Thus, a party cannot ratify an agreement unless he possesses the requisite mental abilities:

> [A] person has mental capacity sufficient to contract if he . . . [has] the ability to understand the nature of the act in which he is engaged and its scope and effect, or its nature and consequences, . . . [and is] in such possession of his faculties as to enable him to know at least what he is doing and to contract understandingly.

*Ridings v. Ridings*, 55 N.C. App. 630, 633, 286 S.E.2d 614, 616 (1982) (summary judgment appropriate on issue of ratification where plaintiff, although presenting evidence of mental incompetence at the time the agreement was executed, failed to show "continued incompetence"). *See also Lowry v. Lowry*, 99 N.C. App. 246, 253, 393 S.E.2d 141, 145 (1990) (upholding summary judgment based upon plaintiff's ratification, where she was "an educated woman and . . . a licensed realtor . . . [and] the error she alleges required no legal explanation").

In the case *sub judice*, plaintiff responded to defendant's motion for summary judgment by offering her own affidavit and that of Dr. Sultan, a clinical psychologist. Dr. Sultan performed a clinical evaluation of the plaintiff, and subjected her to psychological testing, in addition to reviewing the Separation Agreement and other relevant documents. Her affidavit stated in part that:

> 1. [Plaintiff] did not have the mental or emotional capacity to understand or appreciate the contents of the Separation Agreement.
>
> 2. [Plaintiff's] history and clinical testing are all consistent with a woman who has been abused and battered, mentally and physically, her entire life[.]
>
> 3. [Plaintiff's] verbal IQ and ability to understand written materials is in the low 70's. It is extremely unlikely that she understood the Separation Agreement, and it is my clinical opinion that she still does not fully understand the document.

Dr. Sultan's affidavit, if believed, could lead a fact finder to conclude that plaintiff lacked a full understanding of the separation agreement, and thus was incapable of ratifying it. Dr. Sultan found plaintiff's

overall IQ in the range of 75 to 85, but her "verbal IQ and ability to understand written materials" in the "low 70's." *See In re LaRue*, 113 N.C. App. 807, 811, 440 S.E.2d 301, 304 (1994) ("IQ scores of 71 and 72, . . . can represent sub-average general intellectual functioning" and relevant DSM definition "permits inclusion in the Mental Retardation category of people with IQs somewhat higher than 70"). *See also State v. Brewington*, 352 N.C. 489, 518, 532 S.E.2d 496, 513 (2000) ("defendant's full scale IQ was 76, a level just above that of mental retardation"). Significantly, the issue in the present case was not plaintiff's general intellectual functioning, but her ability to understand the implications of a detailed legal document. Dr. Sultan stated that, based on her evaluations, plaintiff "did not have the mental or emotional capacity to understand or appreciate the contents of the Separation Agreement," and that "[i]t is extremely unlikely that she understood the Separation Agreement, and it is my clinical opinion that she still does not fully understand the document[.]"

Moreover, plaintiff's deposition testimony was equivocal regarding her understanding of the separation agreement. Although she acknowledged understanding that she would receive certain property under the agreement, plaintiff also testified that "I read [the agreement], but I didn't understand it"; that she "didn't understand" the waiver of an alimony claim; that she believed she would inherit half of her husband's estate in addition to the property in the agreement; that she did not understand the meaning of the word 'contend' or what a "domestic violence proceeding" was; and that she believed the separation was only temporary. She also testified that she left school after the seventh grade, never had a personal bank account or a joint account during her marriage, and had not applied for social security benefits for certain physical conditions because she "didn't want to admit that I'm disabled."

We recognize that other evidence in the record, that plaintiff engaged in several transactions involving property transferred pursuant to the separation agreement, was certainly sufficient to raise the defense of ratification. However, for the trial court to determine that ratification had been conclusively established as a matter of law, it necessarily must have weighed the strength and credibility of defendant's evidence regarding those transactions against plaintiff's testimony and Dr. Sultan's affidavit, indicating that plaintiff acted under ongoing duress, and did not have a "full understanding" of the separation agreement. Yet, "[i]t is for the trier of fact to resolve issues of credibility and to determine the relative strength of competing evi-

dence." *Upchurch v. Upchurch*, 128 N.C. App. 461, 464, 495 S.E.2d 738, 740, *disc. review denied*, 348 N.C. 291, 501 S.E.2d 925 (1998).

We conclude that the evidence raised genuine issues of material fact regarding duress, and plaintiff's understanding of the separation agreement, thus calling into question her ability to ratify it. Accordingly, the trial court's grant of summary judgment is

Reversed.

Judge GREENE dissents.

Judge HUDSON concurs.

GREENE, Judge, dissenting.

Because I do not believe a genuine issue of fact exists with respect to plaintiff's ratification of the agreement, I dissent.

### *Ratification*

Defendant contends that because plaintiff accepted all the benefits under the agreement and was not under duress at the time she accepted those benefits, she ratified the agreement and cannot now challenge it. I agree.

Duress occurs when a party is induced to perform or forego some act under circumstances depriving her of the exercise of her free will. *Link v. Link*, 278 N.C. 181, 194, 179 S.E.2d 697, 704-05 (1971). A separation agreement executed while a party is acting under duress is invalid and can be set aside. *Cox v. Cox*, 75 N.C. App. 354, 356, 330 S.E.2d 506, 508 (1985). An agreement, however, even if procured by duress, "may be ratified by the victim so as to preclude a subsequent suit to set [it] aside." *Link*, 278 N.C. at 197, 179 S.E.2d at 706. A party ratifies an agreement by retroactively "authoriz[ing] or otherwise approv[ing] [it], . . . either expressly or by implication." *Black's Law Dictionary* 1262 (6th ed. 1990). Thus, ratification can occur where a party accepts benefits and performs under an agreement. *See Lowry v. Lowry*, 99 N.C. App. 246, 254, 393 S.E.2d 141, 146 (1990) (wife ratified agreement by signing it, incorporating it into consent judgment, and receiving benefits for three years); *see also Hill v. Hill*, 94 N.C. App. 474, 479, 380 S.E.2d 540, 544 (1989) (wife ratified agreement by monthly accepting from the husband $1,000.00 and other benefits under an agreement even after she became aware of alleged wrong-

GOODWIN v. WEBB

[152 N.C. App. 650 (2002)]

doing); *Ridings v. Ridings*, 55 N.C. App. 630, 632-33, 286 S.E.2d 614, 616 (husband ratified agreement by paying alimony for four months and accepting title and possession of property transferred under an agreement), *disc. review denied*, 305 N.C. 586, 292 S.E.2d 571 (1982). The act only constitutes ratification if it is done with full knowledge that the acceptance of benefits or the performance arises pursuant to the agreement and is done so without any duress. *See Link*, 278 N.C. at 197, 179 S.E.2d at 706-07; *see also Housing, Inc. v. Weaver*, 37 N.C. App. 284, 300, 246 S.E.2d 219, 228 (1978) (there can be no ratification so long as the duress continues), *aff'd*, 296 N.C. 581, 251 S.E.2d 457 (1979).

A

*Full Knowledge*

In this case, viewing the evidence in the light most favorable to plaintiff, plaintiff was aware that the $160,000.00, the various tracts of land, and the truck, all of which she used, were benefits she received under the agreement. Immediately after receiving a check in the amount of $160,000.00 directly from defendant's firm, plaintiff negotiated the check and invested it into mutual funds. With respect to the various tracts of land she has leased or otherwise encumbered, plaintiff testified in her deposition that she was aware she would be receiving those pursuant to the agreement. There is no evidence in the record that at the time plaintiff encumbered those tracts, she was unaware she possessed them by reason of the agreement. Plaintiff has failed to come forward with any evidence or specific facts showing she did not have full knowledge that the benefits she acquired were by virtue of the agreement. Indeed, the evidence shows plaintiff was using the $160,000.00 and the tracts of land with full knowledge they were benefits arising under the agreement. While the majority states plaintiff did not understand the agreement, plaintiff testified in her deposition that: she understood what Goodwin meant when he told her he would not pay her alimony; she understood she could have taken the agreement to an attorney for review prior to signing it; and she understood everything she would be receiving and forfeiting under the agreement. Accordingly, I do not believe that Dr. Sultan's affidavit, in light of plaintiff's deposition testimony, creates a genuine issue of fact as to whether plaintiff acted with full knowledge. *See Mortgage Co. v. Real Estate, Inc.*, 39 N.C. App. 1, 9, 249 S.E.2d 727, 732 (1978) (a party cannot file an affidavit contradicting her prior sworn statement in order to create a genuine issue of fact for trial), *aff'd*, 297 N.C. 696, 256 S.E.2d 688 (1979).

**GOODWIN v. WEBB**

[152 N.C. App. 650 (2002)]

B

*Duress*

Plaintiff next argues that even if she acted with full knowledge, she was under duress at the time she accepted the benefits under the agreement. I disagree.

In this case, there is no evidence plaintiff accepted the benefits of the agreement while acting under duress. Plaintiff willingly accepted and negotiated the check in the amount of $160,000.00 and encumbered some of the property acquired under the agreement by using it to secure loans. All of this occurred without any threat or coercion from Goodwin. Even more notable is the fact that after Goodwin's death plaintiff began renting the 117-acre farm, continued to lease the Faulkner tract and the office building, and had the marital home and the 117-acre farm appraised to purchase a home for her daughter. Thus, even if I were to assume plaintiff may have acted under duress at the time she signed the agreement and up until Goodwin's death, there is no evidence in the record to this Court supporting plaintiff's duress after Goodwin's death. Accordingly, I do not believe there is a genuine issue of fact as to whether plaintiff acted under duress while accepting the benefits and performing under the agreement.[1] Therefore, because plaintiff accepted the benefits under the agreement with full knowledge and without duress, she ratified the agreement and thus is precluded from challenging it. I would affirm the trial court's order.

---

1. I note the affidavits of plaintiff and Dr. Sultan state that plaintiff was afraid to contest the agreement up until Goodwin's death. Plaintiff, in her own deposition, however, stated she told Goodwin she would contest the agreement, she met with a lawyer concerning contesting the agreement, and was in the process of filing a lawsuit to contest the agreement at the time Goodwin died; hence there is no evidence whatsoever that plaintiff was coerced into accepting and using the benefits of the agreement.