ANITA M. HONEYCUTT, Plaintiff v. JOSEPH WHITNEY HONEYCUTT, Defendant

No. COA09-1450

(Filed 16 November 2010)

**1. Appeal and Error— record—settlement order not included —no prejudice—appeal not dismissed**

The absence of an order settling the record on appeal in a domestic case was a technical violation which did not result in

dismissal of the appeal where the record otherwise contained that which should have been included and did not contain that which should have been excluded. Neither appellate review nor the adversarial process was impaired.

**2. Appeal and Error— partial summary judgment—interlocutory—avoidance of piecemeal litigation**

An order granting partial summary judgment on rescission of a separation agreement affected a substantial right and was not dismissed as interlocutory where plaintiff sought rescission of the agreement and equitable distribution. Dismissal of the appeal would have created piecemeal litigation.

**3. Divorce— separation agreement—ratification**

The trial court correctly granted summary judgment for defendant on a claim to rescind a separation agreement where there was no issue of fact that plaintiff ratified the agreement with full knowledge that the benefits she received were pursuant to the agreement and that her acceptance of benefits was not under duress or any other wrongdoing.

Judge HUNTER, JR., ROBERT N. concurring in part and dissenting in part.

Appeal by plaintiff from order entered on or about 1 April 2009 by Judge Jane V. Harper in District Court, Mecklenburg County. Heard in the Court of Appeals 14 April 2010.

*James, McElroy & Diehl, P.A., by Amy E. Simpson, for plaintiff-appellant.*

*Casstevens, Hanner, Gunter, Riopel & Wofford, P.A., by Dorian H. Gunter, for defendant-appellee.*

STROUD, Judge.

The trial court granted partial summary judgment in favor of defendant. Plaintiff appeals. Because we conclude that the trial court properly concluded that there was no genuine issue of material fact as to plaintiff's ratification of the parties' "SEPARATION AGREEMENT PROPERTY SETTLEMENT PARENTING AGREEMENT[,]" we affirm.

## I. Background

On or about 26 June 2006, the parties entered into a "SEPARA-TION AGREEMENT PROPERTY SETTLEMENT PARENTING AGREEMENT" ("Agreement"). On 3 October 2008, plaintiff sued defendant requesting rescission of the agreement, equitable distribution, child support/attorney's fees or in the alternative specific performance of the Agreement seeking distribution of "80% of the value of all the assets which Defendant/Husband did not specifically disclose" and payment of plaintiff's attorney's fees, and absolute divorce. On or about 3 December 2008, defendant answered plaintiff's complaint and counterclaimed for child support, restoration of the status quo, and absolute divorce. Also on or about 3 December 2008, defendant filed a motion for summary judgment. On or about 1 April 2009, the trial court granted partial summary judgment in favor of defendant regarding plaintiff's claims for rescission of the Agreement and equitable distribution. Plaintiff appeals.

## II. Referred Motions

[1] Before we consider the substance of plaintiff's appeal we must address three motions filed by the parties with this Court. On or about 14 December 2009, defendant filed a motion to dismiss plaintiff's appeal pursuant to North Carolina Appellate Procedure Rules 9, 11, 12, 25 and 37. Defendant alleges various issues regarding the settlement of the record on appeal. In substance, defendant's arguments are based upon the fact that the record does not contain an order officially settling the record on appeal. Both parties concede that the trial court held a hearing regarding settlement of the record and made rulings as to various documents which should be included in the record; however, plaintiff's counsel failed to have the written order regarding settlement of the record executed by the trial court. Plaintiff filed the record on appeal and both parties filed their briefs.

While we agree that there is a technical deficiency in the record on appeal due to the lack of the trial court's order as to settlement of the record, we do not deem dismissal to be an appropriate remedy in this situation. In *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, our Supreme Court set out the proper analysis for this Court to use when a party fails to comply with the Rules of Appellate Procedure in some respect which does not deprive this Court of jurisdiction:

> The final principal category of default involves a party's failure to comply with one or more of the nonjurisdictional requi-

**HONEYCUTT v. HONEYCUTT**

[208 N.C. App. 70 (2010)]

sites prescribed by the appellate rules. . . . [T]he appellate court faced with a default of this nature possesses discretion in fashioning a remedy to encourage better compliance with the rules.

We stress that a party's failure to comply with nonjurisdictional rule requirements normally should not lead to dismissal of the appeal.

. . . .

Based on the language of Rules 25 and 34, the appellate court may not consider sanctions of any sort when a party's noncompliance with nonjurisdictional requirements of the rules does not rise to the level of a substantial failure or gross violation. . . .

In the event of substantial or gross violations of the nonjurisdictional provisions of the appellate rules, however, the party or lawyer responsible for such representational deficiencies opens the door to the appellate court's need to consider appropriate remedial measures. . . .

. . . .

In determining whether a party's noncompliance with the appellate rules rises to the level of a substantial failure or gross violation, the court may consider, among other factors, whether and to what extent the noncompliance impairs the court's task of review and whether and to what extent review on the merits would frustrate the adversarial process. The court may also consider the number of rules violated, although in certain instances noncompliance with a discrete requirement of the rules may constitute a default precluding substantive review.

. . . .

[W]hen a party fails to comply with one or more nonjurisdictional appellate rules, the court should first determine whether the noncompliance is substantial or gross under Rules 25 and 34. If it so concludes, it should then determine which, if any, sanction under Rule 34(b) should be imposed. Finally, if the court concludes that dismissal is the appropriate sanction, it may then consider whether the circumstances of the case justify invoking Rule 2 to reach the merits of the appeal.

362 N.C. 191, 198-201, 657 S.E.2d 361, 365-67 (2008) (citations and quotation marks omitted).

Here, we conclude that plaintiff's violations regarding the record on appeal were not substantial or gross violations because neither party claims that any evidence, document, or information which should be in the record on appeal is missing or that any item which should have been excluded was included. Under these circumstances, the violation does not "impair[] the court's task of review" as we have all the necessary documents in order to perform a complete review of the merits, and "review on the merits [does not] frustrate the adversarial process" as defendant has not suffered any prejudice or been impeded in arguing his own case due to the procedural defects. *Id.* at 200, 657 S.E.2d at 366-67. Accordingly, we deny defendant's motion to dismiss. Although we caution plaintiff's counsel in the future to ensure that all steps necessary for settlement of the record are completed and properly included in the record on appeal, pursuant to *Dogwood,* we do not impose any sanction against plaintiff. *Dogwood* at 199, 657 S.E.2d at 366 ("Based on the language of Rules 25 and 34, the appellate court may not consider sanctions of any sort when a party's noncompliance with nonjurisdictional requirements of the rules does not rise to the level of a 'substantial failure' or 'gross violation.' ")

In response to defendant's motion to dismiss, on or about 28 December 2009, plaintiff filed a motion to amend the record on appeal and a motion for an extension of time to have the order entered by the trial court added to settle the record on appeal. As we have already noted, we have the necessary documents in order to conduct a thorough review despite the technical violation of the Rules of Appellate Procedure, and as we have denied defendant's motion to dismiss, we also deny both of plaintiff's motions.

### III. Interlocutory Appeal

[2] In its brief, defendant again argues that this Court should dismiss plaintiff's appeal, this time on the grounds that the appeal is interlocutory as there are still several claims pending in the trial court. However, we conclude that plaintiff has demonstrated that the trial court's order granting partial summary judgment affects a substantial right, and thus we disagree. *Jeffreys v. Raleigh Oaks Joint Venture,* 115 N.C. App. 377, 379, 444 S.E.2d 252, 253 (1994) ("[I]n two instances a party is permitted to appeal interlocutory orders. First, a party is permitted to appeal from an interlocutory order when the trial court enters a final judgment as to one or more but fewer than all of the claims or parties and the trial court certifies in the judgment that

**HONEYCUTT v. HONEYCUTT**

[208 N.C. App. 70 (2010)]

there is no just reason to delay the appeal. Second, a party is permitted to appeal from an interlocutory order when the order deprives the appellant of a substantial right which would be jeopardized absent a review prior to a final determination on the merits. Under either of these two circumstances, it is the appellant's burden to present appropriate grounds for this Court's acceptance of an interlocutory appeal and our Court's responsibility to review those grounds." (citations, quotation marks, and ellipses omitted)).

In *Case v. Case*, the parties entered into a separation agreement. 73 N.C. App. 76, 77, 325 S.E.2d 661, 662, *disc. review denied*, 313 N.C. 597, 330 S.E.2d 606 (1985). The plaintiff wife filed a claim for absolute divorce, and the defendant husband raised various counterclaims, including equitable distribution. *Id.* at 77, 325 S.E.2d at 662-63. The plaintiff wife filed for partial summary judgment, and the trial court granted partial summary judgment in the plaintiff wife's favor by dismissing the defendant husband's claim for equitable distribution. *Id.* at 77, 325 S.E.2d at 663. This Court determined that the defendant husband's appeal should be heard, stating:

> The granting of the summary judgment motion is not appealable, unless the appeal is provided for elsewhere in the statute. Defendant may immediately appeal from this interlocutory order if it affects a substantial right. It has been held that an order which completely disposes of one of several issues in a lawsuit affects a substantial right. The trial court in granting summary judgment concluded that the separation agreement was valid and not revoked by the reconciliation of the parties. The separation agreement was a bar to the counterclaim for equitable distribution, thus there existed no genuine issue of material fact. The trial court's conclusion completely disposes of the issue of equitable distribution, thereby affecting a substantial right of the defendant rendering the appeal reviewable.

*Id.* at 78-79, 325 S.E.2d at 663 (citations omitted). Just as in *Case*, here the trial court's order for partial summary judgment "concluded that the separation agreement was valid" and "[t]he separation agreement was a bar to the counterclaim for equitable distribution[;]" the order has completely disposed of plaintiff's claim for equitable distribution and therefore affects a substantial right. *Id.*

A similar situation was presented in *Buffington v. Buffington*, 69 N.C. App. 483, 317 S.E.2d 97 (1984). In *Buffington*, the parties entered into a separation agreement after which the plaintiff husband filed a

lawsuit "seeking a divorce and specific performance of the separation agreement[.]" *Id.* at 484, 317 S.E.2d at 97-98. The defendant wife filed a counterclaim alleging that the separation agreement was void and seeking equitable distribution. *Id.* at 484, 317 S.E.2d at 98. Both parties filed motions for summary judgment as to the enforceability of the separation agreement. *Id.* The trial court granted the plaintiff husband's motion, finding the agreement to be enforceable; the defendant wife appealed. *Id.* This Court addressed the interlocutory appeal as follows:

> Before determining whether the trial court's summary judgment orders were correct, we examine the procedural status of defendant's appeal. As a general rule, a party may properly appeal only from a final order, which disposes of all the issues as to all parties, or an interlocutory order affecting a substantial right of the appellant. The purpose of the substantial right doctrine is to prevent fragmentary or premature appeals, by permitting the trial division to have done with a case fully and finally before it is presented to the appellate division[.]

> In ruling on the parties' summary judgment motions, the trial judge noted that the record fails to establish any genuine issue of material fact that would support the legal conclusion that the separation agreement of the parties is not valid as to the division of the property of the parties. By its rulings, the trial court necessarily determined that the separation agreement was valid as a matter of law and that defendant's counterclaim for equitable distribution should therefore be denied. The only issues left remaining for trial were those relating to plaintiff's claim for specific performance of the separation agreement, or, alternatively, damages for breach. The trial court's orders did not constitute a final judgment as they did not dispose of all issues as to all the parties in the lawsuit. However, it has been held that an order which completely disposes of one of several issues in a suit affects a substantial right. The trial court's order also affects a substantial right of defendant by preventing adjudication of defendant's counterclaim and plaintiff's claims in a single lawsuit[.]

*Id.* at 485-86, 317 S.E.2d at 98 (citations, quotation marks, and ellipses omitted). Just as in *Buffington*, here the trial court's order completely disposed of plaintiff's equitable distribution claim and has the effect of "preventing adjudication of defendant's counterclaim and plaintiff's claims in a single lawsuit[.]" *Id.* at 486, 317 S.E.2d at 98.

The Agreement here provides for distribution of the parties' property; plaintiff seeks a different distribution of marital and divisible property by her claim for equitable distribution. Dismissal of plaintiff's appeal will create piecemeal litigation; if this appeal is dismissed, the trial court could proceed to distribute the property in accord with the Agreement. After the trial, this Court could determine that instead of distributing the property according to the Agreement, the trial court should have set aside the Agreement and instead ruled upon plaintiff's equitable distribution claim. Consideration of plaintiff's appeal at this point avoids the possibility of two trials with the same goal. In accord with *Case* and *Buffington*, we will consider the merits of this appeal. *See Buffington*, 69 N.C. App. 483, 317 S.E.2d 97; *Case*, 73 N.C. App. 76, 325 S.E.2d 661.

## IV. Summary Judgment

We now turn to the issues plaintiff has argued on appeal. Plaintiff contends that the trial court erred in granting partial summary judgment in favor of defendant because there were genuine issues of material fact which precluded summary judgment.

A. Standard of Review

> In the consideration of a motion for summary judgment, the trial judge must view the presented evidence in a light most favorable to the nonmoving party. If the movant demonstrates the absence of a genuine issue of material fact, the burden shifts to the non-movant to present specific facts which establish the presence of a genuine factual dispute for trial.

*Metcalf v. Black Dog Realty, LLC*, —— N.C. App. ——, ——, 684 S.E.2d 709, 717 (2009) (citation omitted). This Court's "standard of review is *de novo*, and we view the evidence in the light most favorable to the non-movant." *Scott & Jones v. Carlton Ins. Agency Inc.*, —— N.C. App. ——, ——, 677 S.E.2d 848, 850 (2009) (citation omitted). The standard of review for an order granting a motion for summary judgment

> requires a two-part analysis of whether, (1) the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact; and (2) the moving party is entitled to judgment as a matter of law.

*Von Viczay v. Thoms*, 140 N.C. App. 737, 738, 538 S.E.2d 629, 630 (2000) (citation and quotation marks omitted), *aff'd per curiam*, 353 N.C. 445, 545 S.E.2d 210 (2001).

HONEYCUTT v. HONEYCUTT

[208 N.C. App. 70 (2010)]

B. Rescission

[3] Because this Court must review "the evidence in the light most favorable to" plaintiff, *Scott* at ——, 677 S.E.2d at 850, the following summary of the facts surrounding plaintiff's claims was drawn entirely from plaintiff's complaint and deposition testimony.[1] Plaintiff and defendant were married on or about 18 November 1995 and separated on or about 1 July 2006. In 2003, the parties "began to experience marital discord[,]" which at various points in time included extramarital affairs by both parties. Plaintiff alleged that defendant's infidelity "began prior to September 2003," while defendant discovered plaintiff's affair in May of 2006. Plaintiff alleged that she "apologized, begged, cried and pleaded" for forgiveness and that she wanted to remain married to defendant. However, defendant wanted to separate and he told plaintiff "that he would have an agreement drawn up that would be 'more than fair.'" Plaintiff "was an emotional mess[.]" Defendant told plaintiff that there may be hope of saving the marriage "if she would sign the agreement as it was presented."

On or about 14 June 2006, defendant presented a proposed agreement to plaintiff. On the day plaintiff received the proposed agreement, plaintiff read over the document "probably at least five or six" times. Within the next day or two, plaintiff contacted Ms. Sandra Dopf, a divorce counselor, to discuss the proposed agreement. Plaintiff "went back and forth on whether" to call an attorney, because she feared that doing so would "blow[] up any chance of salvaging [her] marriage." However, defendant was aware that plaintiff was going to see Ms. Dopf.

Plaintiff went to see Ms. Dopf alone on her first visit and took the proposed agreement to review. Plaintiff was not sure if the document was fair because she did not have "any kind of financial information at that point." Ms. Dopf read the proposed agreement, discussed "various terms" of the document with plaintiff, and answered plaintiff's questions, although "looking back on it[,]" plaintiff did not think that Ms. Dopf answered her questions correctly. Ms. Dopf suggested meeting with both parties to address the issues in mediation.

---

1. We note that some allegations in plaintiff's affidavit, which was filed on or about 11 February 2009, could be construed as contradictory to her deposition testimony which was given on or about 27 July 2007. To the extent that plaintiff's affidavit contradicts her deposition testimony, we will disregard those allegations of the affidavit, as "[a] party is not permitted to file affidavits contradicting prior testimony for the purpose of creating an issue of fact." *Ahmadi v. Triangle Rent A Car, Inc.*, —— N.C. App. ——, ——, 691 S.E.2d 101, 103 (2010) (citation omitted).

Ms. Dopf later met with defendant alone, and then both parties met with her "maybe two more times[.]" The parties and Ms. Dopf discussed various issues regarding custody, visitation, child support, and other financial matters. Although defendant did not bring documents such as bank statements to the meeting with Ms. Dopf, he did bring an Excel spreadsheet of assets and liabilities. Neither plaintiff nor Ms. Dopf "push[ed]" defendant to bring additional financial documentation. Although plaintiff did not know the actual values of various items of property, plaintiff was aware that: the house was worth "probably" over $2,000,000.00; defendant had sold a company for "about $12 million" before taxes; defendant had used some of the funds from the sale of the company to purchase "two office buildings in Wilmington;" plaintiff and defendant were in the process of "building a new house on at [sic] Wrightsville Beach[;]" the parties had purchased a 350 acre farm in Statesville and were jointly obligated on the mortgage; defendant had bought various cars and an airplane; defendant had purchased boats, including paying cash for a "70-foot Hatteras luxury yacht[;]" and defendant had "bought 12 acres of land to develop into home sites," upon which plaintiff had cosigned on the note.

At the final meeting, Ms. Dopf "redid [the] whole document" because there was a problem with the email or download of the document from defendant's attorney. Ms. Dopf made revisions to the document; plaintiff read over the document, asked any questions she had, and understood the document. On or about 26 June 2006, the parties went to lunch together after meeting with Ms. Dopf and then went to Post Net where they signed the Agreement and had it notarized.

In plaintiff's complaint, plaintiff sought rescission of the agreement based upon false representations, nondisclosure, duress, undue influence, and substantive and procedural unconscionability of the Agreement. Plaintiff claims that the property distribution "in the Agreement is heavily in favor of Defendant" and that the child custody and support terms are also "unfavorable to Plaintiff/Wife such that Plaintiff/Wife would not have agreed to such terms had it not been for the pressure and undue influence of Defendant/Husband."

C. Ratification

Defendant argues that plaintiff's claim for rescission for any of the reasons alleged is barred by her ratification of the Agreement. Therefore, even if we were to assume *arguendo* that there are genuine issues of material fact as to some or all of plaintiff's claims for

rescission, defendant contends that plaintiff has ratified the Agreement by her acceptance of benefits under the Agreement. Thus, if defendant is entitled to summary judgment as to his affirmative defense of ratification, the trial court was correct in granting partial summary judgment for defendant.

Plaintiff concedes in her brief that after execution of the Agreement she received:

1) $500,000; and 2) possession of the house on Mary Ardery Circle which she had been residing in with her family during the marriage and prior to the date of separation; two automobiles (which she was driving prior to the date of separation); furniture and personal property in the home; and three investment accounts.

. . . .

[3)] $500,000[;] . . . [4)] 7,000 per month; . . . [5)] $916,000[; and] . . . [6)] $500 per month in child support.

(Footnote omitted.)

It is also worth noting that plaintiff admits in a memorandum to the trial court that she initially hired an attorney regarding the Agreement in early 2007 and brought her first lawsuit for rescission of the Agreement on 7 May 2007. The factual allegations of plaintiff's complaint in the first lawsuit are substantially the same as in this lawsuit. Plaintiff's deposition which was filed in this matter was taken during the first lawsuit. Plaintiff took a voluntary dismissal of the first lawsuit without prejudice on 19 June 2008 and hired new counsel in July 2008; plaintiff's new counsel filed the current lawsuit on 3 October 2008. Plaintiff accepted and has retained at least $1,421,000.00 of the payments and property under the Agreement *after* she had hired her first attorney and filed her first lawsuit against defendant.

In *Goodwin v. Webb*, our Supreme Court adopted Judge Greene's dissent and reversed the opinion of this Court. *Goodwin*, 357 N.C. 40, 577 S.E.2d 621 (2003). The dissent stated that

[a] party ratifies an agreement by retroactively authorizing or otherwise approving it, either expressly or by implication. Thus, ratification can occur where a party accepts benefits and performs under an agreement. The act only constitutes ratification if it is done with full knowledge that the acceptance of benefits or the performance arises pursuant to the agreement and is done so without any duress.

*Goodwin*, 152 N.C. App. 650, 656-57, 568 S.E.2d 311, 315 (2002) (Greene, J., dissenting) (citations, quotation marks, ellipses, and brackets omitted), *rev'd per curiam*, 357 N.C. 40, 577 S.E.2d 621 (2003).

A review of *Goodwin's* facts shows that although the wrongs alleged by the plaintiff wife were substantially more egregious than those alleged by plaintiff here, *see Goodwin*, 152 N.C. App. 650, 568 S.E.2d 311, the Supreme Court found that her acceptance of benefits was controlling. *See Goodwin*, 357 N.C. 40, 577 S.E.2d 621. In *Goodwin*, the plaintiff wife sought to set aside a separation agreement based upon allegations that her husband had "procured [the agreement] by coercion, duress, threats of physical abuse, mental abuse, and undue influence[.]" *Goodwin*, 152 N.C. App. at 651, 568 S.E.2d at 312. The plaintiff wife forecast evidence that her husband[2] had told a friend "that he forced Plaintiff to sign the Agreement by threatening that if she didn't sign the papers he was going to beat the hell out of her." *Id.*, 152 N.C. App. at 652-53, 568 S.E.2d at 313 (quotation marks omitted). The plaintiff wife also testified in her deposition that the husband had "threatened [her] throughout their marriage, that he had frequently beaten her, and that during the weeks before she signed the Agreement, [the husband] told plaintiff if she did not sign the Agreement, he would beat the hell out of her." *Goodwin*, 152 N.C. App. at 653, 568 S.E.2d at 313 (quotation marks and brackets omitted). "[E]ven after signing the Agreement, and until the time of Goodwin's death, [the plaintiff wife] still feared that [the husband] would physically harm her or have someone physically harm her if she did not comply with the Agreement or did something to legally affect the Agreement." *Id.* (quotation marks, ellipses, and brackets omitted). The plaintiff wife also presented evidence from Dr. Sultan, who had "performed a clinical evaluation of" her which stated Dr. Sultan's opinion that "Plaintiff was convinced that she had no choice but to sign the Agreement or risk physical assault and abuse from [the husband]." *Id.* (quotation marks, ellipses, and brackets omitted). The plaintiff wife had endured

> physical and mental abuse . . . during her 25-year marriage [which] left her unable to contest the provisions of the Agreement even had been signed, as she was fearful of repercussions from [the husband] if she contested the Agreement, even

---

2. The husband in *Goodwin* died prior to inception of the case, so his executor was the defendant in the wife's lawsuit for rescission. *Goodwin*, 152 N.C. App. at 651, 568 S.E.2d at 311.

during the time that he was sick and in the hospital and up until the time of his death.

*Id.* (quotation marks, ellipses, and brackets omitted). In addition, the plaintiff wife forecast evidence that she was most likely not intellectually capable of understanding the agreement because her IQ was in the low 70s. *Id.*, 152 N.C. App. at 654, 563 S.E.2d at 314. The plaintiff wife had left school after seventh grade and had "never had a personal bank account or a joint account during her marriage[.]" *Id.*, 152 N.C. App. at 655, 563 S.E.2d at 315. However, the evidence viewed in the light most favorable to the plaintiff wife also showed that she had received "$160,000.00, . . . various tracts of land, and [a] truck" under the agreement. *Id.*, 152 N.C. App. at 657, 563 S.E.2d at 316 (Greene, J., dissenting). The plaintiff wife accepted and used these funds and assets "with full knowledge they were benefits arising under the agreement." *Id.*

The facts here, viewed in the light most favorable to plaintiff, *see Scott* at ——, 677 S.E.2d at 850, clearly demonstrate that plaintiff became aware of the claimed unfairness of the Agreement shortly after its execution; this is evidenced by plaintiff's decision to file her first lawsuit for rescission of the Agreement. Although plaintiff argued before the trial court that her first attorney failed to conduct adequate discovery regarding defendant's assets, the fact remains that plaintiff had "full knowledge" that her "acceptance of benefits or the performance" occurred "pursuant to the agreement[.]" *Id.* Plaintiff has retained all benefits she has received under the Agreement and continued to accept payments under the Agreement until as late as June 2008.

Plaintiff argues that although she has retained the benefits she received under the Agreement, she did file a reply to defendant's counterclaim in which she stated that she "is prepared to disgorge herself of the benefits received under the Agreement if the Agreement is rescinded." Plaintiff contends that her statement that she was "prepared to disgorge" the benefits she received is sufficient. However, we find no authority that a statement that plaintiff is prepared to disgorge the benefits of the Agreement if it is rescinded is sufficient. To the contrary,

[i]n order to rescind, however, the party injured must act promptly and within a reasonable time after the discovery of the fraud, or after he should have discovered it by due diligence, and he is not allowed to rescind in part and affirm in part; he must do one or the other. And as a general rule, a party is not allowed to

rescind where he is not in a position to put the other in *statu quo* by restoring the consideration passed. Furthermore, if, after discovering the fraud, the injured party voluntarily does some act in recognition of the contract, his power to rescind is then at an end.

*Bolich v. Ins. Co.*, 206 N.C. 144, 155-56, 173 S.E. 320, 326-27 (1934) (citation and quotation marks omitted). Instead of acting "promptly and within a reasonable time[,]" plaintiff continued to accept and retain benefits under the Agreement long after she became aware of the alleged improprieties related to the Agreement. *Id.* at 155, 173 S.E.2d at 326.

Plaintiff also argues that *Lumsden v. Lawing*, 117 N.C. App. 514, 451 S.E.2d 659 (1995) supports her argument that disgorgement of benefits is not always required as a precondition to a claim for rescission. In *Lumsden*, this Court stated that "[r]escission of a contract implies the entire abrogation of the contract from the beginning. Caselaw indicates that as a general rule, a party is not allowed to rescind where he is not in a position to put the other in *statu quo* by restoring the consideration passed." *Id.* at 518, 451 S.E.2d at 662 (citations, quotation marks, and brackets omitted). However, *Lumsden* involved "extraordinary circumstances" which made it impossible for the plaintiffs to reconvey the real property which was the subject of the action, as it had been foreclosed and sold to a third party. *Id.* at 515-20, 451 S.E.2d at 660-62. Because of these "extraordinary circumstances[,]" this Court further stated that "[t]he rule requiring return to status quo ante is a general rule, not an absolute rule. A preeminent authority on the law of contracts states that if complete restoration to status quo is impossible, the terms of a rescission remedy rest in the sound discretion of the courts." *Id.* at 519, 451 S.E.2d at 662 (citations omitted). *Lumsden* is inapposite to this case, as there is no showing or allegation of any impossibility for plaintiff to disgorge the benefits she has received under the Agreement. In fact, plaintiff acknowledges that disgorgement of the benefits is possible by her allegation that she is "prepared" to do so.

Plaintiff further argues that she should not have to return the benefits of the agreement to defendant as she is actually entitled to more than she has received, so she would be returning them to defendant only so that he would be required to give those benefits, and more, right back to her. However, plaintiff cites no authority for this argument, and we note that plaintiff's claim in this regard would have been true in *Goodwin* as well, but our Supreme Court still agreed

with Judge Greene in his determination that the plaintiff wife's retention of the assets she received under the agreement demonstrated her ratification of the agreement. *See Goodwin*, 357 N.C. 40, 577 S.E.2d 621. Because there is no genuine issue of fact that plaintiff ratified the Agreement with full knowledge that the benefits she was receiving were pursuant to the Agreement and that her acceptance of benefits was not under duress or any other wrongdoing, *see id.*, 152 N.C. App. at 656-57, 568 S.E.2d at 315 (Greene, J., dissenting), we affirm the trial court's order granting partial summary judgment in favor of defendant.

### V. Conclusion

For the foregoing reasons, we affirm the trial court order granting partial summary judgment.

AFFIRMED.

Judge McGEE concurs.

Judge HUNTER, JR., Robert N. concurs in part and dissents in part in a separate opinion.

HUNTER, JR., Robert N., Judge, concurring in part and dissenting in part.

While I agree with my colleagues in regard to the resolution of defendant's motion to dismiss Anita Honeycutt's ("plaintiff") appeal for failure to properly settle the record on appeal, I dissent from that portion of the majority opinion regarding the resolution of defendant's motion to dismiss the appeal as interlocutory. Because I do not believe we should exercise jurisdiction over the questions raised by plaintiff, I express no opinion on the underlying merits of her claims for relief or the validity of the judgment below.

Plaintiff filed a complaint based on two alternative theories of relief. In her first theory, plaintiff seeks rescission of the separation agreement previously entered by the parties on grounds of unconscionability, and subsequent to rescission, an unequal distribution of the marital assets. Plaintiff also sought an absolute divorce, child support, and attorneys' fees. In the alternative, plaintiff pled a second theory of relief, in which she seeks specific performance of the separation agreement, providing her with an 80% distribution of any previously undisclosed assets, and attorneys' fees. The trial court's partial summary judgment order granted defendant's motion to deny plaintiff's claim for rescission of the separation agreement and for an equitable distribution. This ended any claim for relief on plaintiff's

first theory of relief until appeal. The trial court's order, however, denied defendant's other motions for summary judgment and left for trial plaintiff's claims for child support and attorneys' fees, and her alternative claim for specific performance of the separation agreement with regard to the identification of undisclosed assets. The trial court's partial summary judgment order also left available for future resolution a substantial claim regarding the distribution of marital property under the separation agreement, to wit, whether defendant had disclosed all of his assets at the time the separation agreement was agreed upon, and if not, how any such assets are to be distributed.

As a jurisdictional foundation for her appeal, plaintiff admits that this appeal is interlocutory. She nevertheless claims that the trial court's order granting partial summary judgment affects a substantial right: the right to avoid two trials and the possibility of being prejudiced by inconsistent verdicts. Specifically, plaintiff argues

the dismissed claims and the remaining claims[] all deal in whole or in part with the identification, valuation and distribution of certain marital assets and liabilities. These assets could be identified, valued and distributed as part of the claim for specific performance. If [plaintiff] is successful on her appeal, and then successful on her claim to set aside the [separation] [a]greement, these same assets will be subject to redistribution by another judge and jury at a later date.

I disagree.

In domestic relations cases, when the trial court has upheld the validity of a separation agreement in a partial summary judgment order, this Court has reached differing conclusions as to whether a substantial right is affected. *Bromhal v. Stott*, 101 N.C. App. 428, 399 S.E.2d 340 (1991) (no substantial right where damages issue remained at trial); *Case v. Case*, 73 N.C. App. 76, 325 S.E.2d 661 (1985) (substantial right recognized even though claims for absolute divorce, child support, and child custody remained at trial); *Buffington v. Buffington*, 69 N.C. App. 483, 317 S.E.2d 97 (1984) (substantial right recognized where issue of specific performance of the separation agreement or damages for breach remained at trial). These differing results are a consequence of the case-by-case assessment required for each interlocutory jurisdictional decision. Examining the law governing interlocutory appeals and the substantial right doctrine reveals that this *sui generis* procedure has resulted

in no clear holding from either this Court or the North Carolina Supreme Court on this specific question.

I disagree with the majority's reading of the facts of this case and the facts of *Case v. Case* and *Buffington v. Buffington,* which the majority cite as authority for this Court to assert jurisdiction. In *Case* and *Buffington,* the trial court's summary judgment order determined the final outcome of the distribution of all marital property; in neither case was further action by the trial court necessary with regard to the allocation of the parties' marital property. *Case,* 73 N.C. App. at 78, 325 S.E.2d at 663; *Buffington,* 69 N.C. App. at 485, 317 S.E.2d at 98. In this case, however, there are issues that remain to be determined regarding the application of the separation agreement, specifically plaintiff's claim that property exists that was undisclosed by defendant and requires distribution by the terms of the separation agreement. Because this claim remains outstanding, the partial summary judgment order is not final in any meaningful way because it does not decide all property issues between the parties.

An interlocutory order is "one made during the pendency of an action which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Cagle v. Teachy,* 111 N.C. App. 244, 247, 431 S.E.2d 801, 803 (1993). "Generally, there is no right of immediate appeal from interlocutory orders and judgments." *Goldston v. Am. Motors Corp.,* 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990).

> An interlocutory order may be immediately appealed in only two circumstances: (1) when the trial court, pursuant to N.C.R. Civ. P. 54(b), enters a final judgment as to one or more but fewer than all of the claims or parties and certifies that there is no just reason to delay the appeal; or (2) when the order deprives the appellant of a substantial right that would be lost absent appellate review prior to a final determination on the merits.

High *Rock Lake Partners, LLC v. N.C. Dep't of Transp.,* —— N.C. App. ——, ——, 693 S.E.2d 361, 366 (2010), *disc. review denied,* —— N.C. ——, —— S.E.2d —— (No. 262P10) (filed 26 August 2010). " 'A substantial right is one which will clearly be lost or irremediably adversely affected if the order is not reviewable before final judgment.' " *Musick v. Musick,* —— N.C. App. ——, ——, 691 S.E.2d 61, 63 (2010) (quoting *Embler v. Embler,* 143 N.C. App. 162, 165, 545 S.E.2d 259, 262 (2001)). No Rule 54(b) certification has been entered in this

case, and therefore, the "substantial right" exception is the only possible jurisdictional basis for review.

In this case, the trial court concluded that the separation agreement would control the distribution of the parties' marital property. The only potential remaining claim in which the trial court's decision could stand as a conflicting result is plaintiff's claim for specific performance of the separation agreement. Were we to dismiss this appeal as interlocutory, the suit would return to the trial court, and the parties could argue the merits of the specific performance claim.[3] If during the course of the litigation defendant was ordered to present a more complete list of assets per the terms of the separation agreement, and that list contained items not previously disclosed, then plaintiff may be entitled to a somewhat greater distribution of those assets under a sanctions clause in the agreement. In light of such a showing by plaintiff, the trial court could enter an order making findings and conclusions regarding the distribution of these undisclosed assets under the specific performance claim, and also come to a conclusion on the issues of the child support and attorneys' fees.

The majority's decision appears to be based upon the following logic: the trial court's order affects a substantial right because, if this Court does not address the present appeal, the parties await a final determination of all claims (i.e., the remaining claim for specific performance of the separation agreement), and if this Court were to subsequently reverse the trial court on the issue of rescission of the separation agreement, plaintiff would face the possibility of conflicting verdicts on the same facts. Based upon the majority's reasoning on the merits of the case, I think the premise that another panel of this Court would reach a conclusion different from that of the majority is unlikely. I also believe the majority's reasoning would apply to every appeal of an interlocutory order—effectively eliminating any meaningful distinction between those orders that affect a substantial right and those that do not. Examples of the difficulty in applying this rule to domestic relations cases abound and have been cited by appellees. *See Webb v. Webb*, 196 N.C. App. 770, 677 S.E.2d 462 (2009); *McIntyre v. McIntyre*, 175 N.C. App. 558, 623 S.E.2d 828 (2006); *Evans v. Evans*, 158 N.C. App. 533, 581 S.E.2d 464 (2003); *Embler*, 143 N.C. App. 162, 545 S.E.2d 259; *Stafford v. Stafford*, 133 N.C. App. 163, 515 S.E.2d 43, *aff'd per curiam*, 351 N.C. 94, 520 S.E.2d 785 (1999); *Rowe*

---

3. The central focus of these claims is what, if any, undisclosed assets the parties had at the time the separation agreement was signed.

*v. Rowe,* 131 N.C. App. 409, 507 S.E.2d 317 (1998); *Hunter v. Hunter,* 126 N.C. App. 705, 486 S.E.2d 244 (1997).

Moreover, the majority's decision will not obviate the need for the trial court to examine the claims for fraud, misrepresentation, or constructive fraud because of the "disputed" material facts regarding undisclosed assets. If the concealment is material, then the court below and this panel may have reached an unjust result on the claim for rescission. Even if the decision below is clear, little judicial economy will have been achieved by taking jurisdiction of this claim because the trial court and this Court will have to visit these facts and transactions twice.

Our law governing interlocutory appeals seeks to discourage piecemeal litigation. *Waters v. Qualified Personnel, Inc.,* 294 N.C. 200, 207, 240 S.E.2d 338, 343 (1978) (stating interlocutory appeals are disfavored in order to "prevent fragmentary, premature and unnecessary appeals by permitting the trial divisions to have done with a case fully and finally before it is presented to the appellate division"). Because plaintiff can raise the issues in this appeal after a final disposition of this case, and little possibility of inconsistent verdicts exists, no substantial right has been affected by the trial court's order granting partial summary judgment. Accordingly, review of the order by this Court is not proper. I would dismiss the appeal as interlocutory.